No. 51.—THE CENTRAL BANK OF GEORGIA, plaintiff in error, *vs.* ALLEN LITTLE, administrator, &c. and others, defendants in error.

[1.] A debt due to the Central Bank of Georgia, is not, in legal contemplation, a debt due to the public, as contemplated by the Act of 1792, which will entitle it to *priority* of payment out of a decedent's estate, on general principles; but it is competent for the General Assembly to declare, that debts due to the Central Bank, shall have *priority* of payment, in the same manner as debts due to the public, and the General Assembly has so declared, by the 12th section of the amended charter of the Central Bank.

[2.] When the State of Georgia incorporated the Central Bank, and placed the public funds in that institution, *to be controlled and managed by the* officers thereof, she divested herself, so far as concerns the transactions of that corporation, of her sovereign character, and assumed that of a private citizen; and upon general principles was not entitled, although the sole owner of the capital stock of the bank, to claim *priority* of payment of a debt due to the bank, out of a decedent's estate.

[3.] Bills of credit, as contemplated by the 10th section of the 1st article of the Constitution of the United States, are such as are drawn or issued by the State, upon the *general credit thereof,* without the appropriation of any specific fund for the payment, or ultimate redemption of such bills.

The Central Bank of Georgia *vs.* Little *et al.*

Distribution of money, in Baldwin Superior Court. Decision by Judge JOHNSON.

The only issue in this case was, whether on the distribution of the assets of an intestate, a debt due to the Central Bank, was a debt due to the State, so as to give it a priority of lien over older judgments belonging to individuals. Judge *Johnson* held that it was not, and the counsel for the Central Bank excepted.

A. H. KENAN, for plaintiff in error.

I. L. HARRIS, for defendant.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] The only question made by the record in this case, for our consideration and judgment, is, whether a debt due to the Central Bank of Georgia, shall be entitled to *priority* of payment in the distribution of a decedent's estate.

The Court below ruled, that a debt due the Central Bank was not entitled to priority of payment, on the ground that the corporation occupied the same position as a natural person, in regard to debts due to it.

The general principle upon which the decision of the Court below was based, we do not controvert.

Persons are divided by the law, into either natural or artificial persons. Natural persons are such as the God of nature formed us; artificial, are such as are created and devised by human laws, for the purposes of society and government, which are called corporations, or bodies politic. 1 *Bl. Com.* 123.

The Central Bank of Georgia is an *artificial person*, capable of *suing* and being *sued*. *Prince's Dig.* 74.

By the 10th section of the Act of 1792, the debts due by any testator or intestate, are directed to be paid by the executors or administrators, in the following order, to wit: funeral and other expenses of the last sickness; charges of probate and will, or of the letters of administration; next debts due to the *public, &c. Prince,* 228.

The plaintiff in error insists, that inasmuch as the State of Georgia is the sole corporator and owner of the capital stock of the Central Bank, that therefore, a debt due to the corporation is a debt due to the *public*, and entitled to *priority* of payment out of the assets of the decedent's estate.

To this general proposition, we cannot yield our assent, and if there was no other legislation in regard to this question, our judgment would be in favor of the defendant in error. When the State of Georgia incorporated the Central Bank, and placed the public funds in that institution to be controlled and managed by the officers thereof, she divested herself, so far as concerns the transactions of that corporation, of her sovereign character, and assumed that of a private citizen. In the language of Chief Justice *Marshall*, in the case of *The Bank of the United States vs. The Planter's Bank*, (9 *Wheaton's R.* 904,) "the State of Georgia, by giving to the bank the capacity to sue and be sued, voluntarily strips itself of its sovereign character, so far as respects the transactions of the bank, and waives all the privileges of that character. As a *member of a corporation*, a government never exercises its *sovereignty*. It acts merely as a corporator, and exercises no other power, in the management of the affairs of the corporation, than are expressly given by the incorporating Act."

In the case of the *Bank of the State of South Carolina vs. Gibbs*, it was held, that notwithstanding the State was the owner of the *entire stock* of the bank, a debt due to *the bank* was not a debt due to *the public*, and entitled to *priority* on that ground, but that the bank was a mere corporation, possessing the same powers and privileges of other corporations. 3 *M'Cord's R.* 377. Our Act of 1792, prescribing the order in which the debts of decedents shall be paid, is believed to be an exact transcript of the Executor's Act of South Carolina.

On general principles then, we hold, that when the State creates an artificial person, by an act of incorporation, for the purposes of commerce or banking, and vests her capital therein, without reserving to herself any of the rights or privileges which belong to her in her sovereign capacity, such artificial person

or corporation so created, occupies the same position in regard to the collection of its debts, as other persons, and is not entitled to any *priority* in the payment thereof, on the ground that the State is the *owner of the corporate property.* A debt due the Central Bank of Georgia, an *artificial person,* cannot properly be said to be a debt due to *the public,* as contemplated by the Act of 1792.

[2.] Thus far we have considered this question upon *general principles,* independent of the Act amending the charter of the Central Bank, passed 19th December, 1829.

By the 12th section of the amended charter, the General Assembly declare, that "in directing by the second section of the Act establishing the bank, the transfer to it of all the bonds, notes, specialties, judgments due, or to become due to the State, the General Assembly did not divest the State of any of its *rights, powers, privileges,* or *immunities reserved by law,* or accruing to it, in virtue of its sovereign capacity, in regard to the *collection* of the aforesaid bonds, notes, specialties, &c. further than to vest the said rights, powers, privileges and immunities, in the said president and directors. And all the *aforesaid rights, powers, privileges, and immunities,* are hereby declared to be *vested in the president and directors of the said bank,* by them to be used, enjoyed, and exercised, in behalf, and for the benefit of the State, in regard to the aforesaid bonds, notes, specialties, judgments, &c. and all notes that have been, or may hereafter be, discounted in renewal of them, in terms of the charter, and all other notes and *bills of exchange,* that have been, or *may hereafter be discounted by said bank,* in as full, perfect, absolute, and unqualified a manner as they *could have been used, enjoyed, and exercised by the State, had no such transfer been made, or such bank been established.*" *Prince,* 77. That it was competent for the General Assembly to declare, that the debts due *the Central Bank* should be entitled to *priority* of payment in the distribution of a decedent's estate, in the same manner as debts due *the public,* cannot, we think, admit of a reasonable doubt. Why was it not within the legitimate province of the Legislature to declare that debts due the Central Bank should be paid in the same order as

debts due the public, as it was to declare, that the funeral and other expenses of the last sickness, should first be paid? The question is not whether a debt due the Central Bank is entitled to *priority* of payment, on the ground that it is a *debt due the public;* but the question is, whether the Legislature has not declared in the 12th section of the amended charter, that debts due the *Central Bank* shall occupy the same position, as regards *priority* of payment, as the debts due *the public.*

The bonds, notes, specialties, &c. due the State, and which were transferred to the Central Bank, by the second section of the charter of 1828, were undoubtedly debts *due the public,* and if they had remained in the State treasury, would have been entitled to *priority* of payment. Before the State turned over these debts to the bank, she had the right and privilege, by law, to demand *priority* of payment thereof, out of the decedent debtor's estate. This right and privilege, is expressly conferred on the *bank,* by the 12th section of the amended charter, to be used and enjoyed, in as full, perfect, absolute, and unqualified a manner, as it could have been used and enjoyed by the State, had no transfer of the debts been made, or the Central Bank established. It is by virtue of this express enactment of the Legislature, that the debt in question (which was created long since the amendment of the charter) is entitled to *priority* of payment, and not because a debt due the Central Bank is necessarily a debt due *the public.*

[3.] It was, however, urged on the argument, that to give a debt due the Central Bank *priority* of payment, would be in effect to hold, that the capital stock of the bank belonged to the public, and that the charter authorized the issuing or admitting bills of credit within the prohibition contained in the 10th section of the first article of the Constitution of the United States, and was, therefore, void. In order to obtain a clear understanding of this view of the question, we will first ascertain what are "bills of credit," as contemplated by the Constitution? When we look into the past history of our government, we find, that many of the States issued bills upon the *general credit* thereof, which circulated as money, without appropriating any *specific*

*fund* for the payment or redemption of such bills. "Bills of credit," as contemplated by the Constitution, are such as are drawn or issued by the State, upon the *general credit thereof,* without the appropriation of any specific fund for the payment or ultimate redemption of such bills. In the one case, the bills are based upon the *general credit of the State alone;* in the other, the bills are based on the credit of a certain *specific fund,* specially set apart and *pledged* for the payment of the bills authorized to be put into circulation as money.

The bills authorized to be issued by the charter of the Central Bank were not based upon the *general credit of the State,* but a *specific fund* was created for the payment thereof, consisting of the money in the State treasury, not then otherwise appropriated, the shares owned by the State in other banks, and all bonds, notes, &c. due the State, as well as all the money arising from the sale of fractional lots of land, and town lots, which then belonged to the State, as well as all other debts and moneys at any time due the State. This specific fund constituted the capital stock of the bank, and was *pledged* for the payment of the bills and notes issued by the bank. The bills and notes therefore, which were authorized to be issued by the Central Bank under the charter, were not based upon the *general credit of the State,* but upon the *specific fund* specially appropriated, set apart, and *pledged* for the payment thereof; in other words, the bills were not " *emitted* " *upon the general credit of the State,* as prohibited by the Constitution. The radical defect in the argument for the defendant in error, consists in the idea, that a debt due to the Central Bank, cannot have *priority* of payment, unless it is decided to be a debt due to *the public;* and therefore, he says, if it is a debt due to the public, the capital stock of the bank belongs to the public, and the bills and notes of the bank have been issued, or " emitted " on the credit of the public, and the charter is within the constitutional prohibition.

To this view of the question, we answer that the charter of the Central Bank is not within the prohibition of the Constitution, for the reasons already stated ; that the debt in question, is not,

in legal contemplation, a debt due to the *public*, but that it is a debt due to *the Central Bank of Georgia*, an artificial person; that it was competent for the General Assembly to declare, that debts due to the Central Bank of Georgia, should be entitled to *priority* of payment, in the same manner as debts due to the public; and that the General Assembly has so declared in the 12th section of the amended charter, passed 19th December, 1829.

Therefore, let the judgment of the Court below be reversed.