856 NEBRASKA REPORTS. [VOL. 112

State, ex rel. Davis, v. Kilgore State Bank.

---

STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL, V. KILGORE STATE BANK: FRED A. CUMBOW, RECEIVER, APPELLEE: UNITED STATES FIDELITY & GUARANTY COMPANY, APPELLANT.

FILED DECEMBER 29, 1924. No. 23391.

1. Banks and Banking: DEPOSITS: PRIORITY. A deposit by the United States, through its proper agents, of individual Indian money in a state bank is entitled, upon failure of said bank. both to priority against the assets of the bank and the protection of the state bank guaranty fund; and this is so notwithstanding a bond in accordance with federal law be first given by the bank to secure the deposit.

2. ————: GUARANTY FUND: SUBROGATION. The surety on a bond given by a state bank to secure a deposit of Indian money, such as is required by federal law, will ordinarily be subrogated to the rights of the depositor of such money—the United States by its proper agents—when no equity intervenes to bar such subrogation and when the surety has paid the depositor the amount due on such deposit. Held. in this case, that the appellant is entitled to such subrogation, and consequently to a first lien upon the assets of the bank and to payment from the state bank guaranty fund.

APPEAL from the district court for Cherry County: WILLIAM H. WESTOVER, JUDGE. Reversed, with directions.

Reavis & Beghtol, O. M. Walcott and C. E. Sanden, for appellant.

C. M. Skiles, James C. Quigley and J. J. Harrington, contra.

Heard before MORRISSEY, C. J., DAY, GOOD and THOMPSON, JJ., and SHEPHERD, District Judge.

SHEPHERD, District Judge.

The Kilgore State Bank of Kilgore, Nebraska, was insolvent, and through petition filed by the attorney general in district court of the sixteenth district its insolvency was duly declared by the court, and Fred A. Cumbow was appointed receiver. The receiver classified the claim of the United States Fidelity & Guaranty Company for $22,000, the same being the claim here in question, as a " general claim not having priority." Thereupon, by leave of court, the surety company intervened and, alleging that the claim was both a claim of first priority against all the assets of the bank and a claim entitled to payment from the guaranty fund along with other deposits, prayed decree to that effect.

By an amended answer the receiver admitted **many of** the allegations of the petition, but averred in defense that the claim was not filed with the receiver as required by law; that it was based upon a void bond and upon an unauthorized deposit; that it is in reality a claim of the United States against the state of Nebraska; that the intervener bases its claim upon an asserted but nonexistent right to subrogation to the right of the United States against the bank guaranty fund; that the deposit made was a deposit of public money of the United States, and that therefore no right exists against the guaranty fund; that the intervener was a depositor and can maintain no claim except against the bank; that the bank paid more than 5 per cent. upon the deposit and that accordingly no valid claim can arise against the guaranty fund.

To this answer, which also contained a traverse to the petition generally, the intervener filed a general denial by way of reply.

In the decree of the court the claim was rejected, and the intervening claimant duly appealed, assigning that the court erred (1) in refusing to allow the appellant reim-

bursement from the guaranty fund, and (2) in refusing the claim priority over all others against the bank's assets.

There is scarcely any dispute as to the facts, none at all as to the following: Claude C. Covey and his successor, J. A. Buntin, who were superintendents of the Rosebud agency, deposited a large amount of individual Indian money upon checking account in the Kilgore State Ba_k, the bank having theretofore given bond to secure the repayment of the same to the United States as required by federal law. The intervener signed this bond as surety. The account had been checked down to $22,000 when the bank was taken over by the department. The commissioner of Indian affairs called upon the surety company and it paid the amount due in the total sum, including interest, of $22,516.39. The bond was in appropriate form, running to the United States and requiring such action on the part of the surety company. A statement in writing, made by the assistant commissioner upon payment by the surety, recites the payment and sets forth in substance that the surety company is accordingly entitled to assert the rights of the United States in recovering from those bound. The bank paid interest at 5 per cent. on the deposit so long as it was a going concern. It also paid the surety company, the intervener, $125 for the bond, charging it with rent, clerk hire, etc., as an expense of bank operation. The total value of the bank's assets was $50,000, which was much less than its liabilities.

The significant provision of law applicable to the case at bar is to be found in section 8033, Comp. St. 1922. It is as follows:

" The claims of depositors, for deposits, and claims of holders of exchange, shall have priority over all other claims, except federal, state, county and municipal taxes, and subject to such taxes, shall at the time of the closing of a bank be a first lien on all the assets of the banking corporation from which they are due and thus under receivership, including the liability of stockholders, and, upon proof thereof, they shall be paid immediately out of the

available cash in the hands of the receiver. If the cash in the hands of the receiver, available for such purpose, be insufficient to pay the claims of depositors, the court in which the receivership is pending, or a judge thereof, shall determine the amount required to supply the deficiency and cause the same to be certified to the department of trade and commerce, which shall thereupon draw against the depositors' guaranty fund in the amount required to supply such deficiency and shall forthwith transmit the same to the receiver, to be applied on the said claims of depositors."

By this provision it would seem that in the first instance the United States, acting for its ward, the Indian, and depositing the latter's money, would stand in the place of any other depositor of the bank and have recourse to the guaranty fund.

It is patent that the objection that the claim was not filed with the receiver is captious. The receiver testified that it was filed. It was stated and classified in the latter's official report. No defense can be made upon this ground.

The defense that the claim is a claim of the United States made against the state is equally untenable. The claim is made by the United States for and on behalf of its wards. It is not a claim of, or belonging to, the United States.

The fact that the bank paid a premium of $125 for the surety bond does not constitute a defense as making the interest rate paid exceed the maximum 5 per cent. It was a current expense of the bank, so charged, and properly so charged.

We pass the contentions that the deposit was made without authority and that the bond was void, as having been answered by what has been heretofore said in this opinion. All of these enumerated contentions are without merit.

Whether the surety company was subrogated to the rights of the United States, and thereby given access to the bank guaranty fund, is a question much argued in the briefs. The referred to written statement made by the assistant commissioner somewhat indicates conventional subrogation. But passing to the matter of legal subroga-

tion, or subrogation by operation of law, we find the rule stated very favorably to the appellant in *Nelson v. Webster*, 72 Neb. 332: " Under the civil law not only is the surety entitled where he pays the whole debt to the benefit of all the collateral securities taken by the creditor, ' but he is also entitled to be substituted, and to the very debt itself, to the creditor by way of cession or assignment. And upon such cession or assignment * * * the debt is, in favor of the surety, treated not so much as paid, as sold; not as extinguished, but as transferred with all its original obligatory force against the principal.' " On the strength of this authority, which cites *Wilson v. Burney*, 8 Neb. 39, and is followed and approved in *Kramer v. Bankers Surety Co.*, 90 Neb. 301, an ordinary surety would seem to be entitled to subrogation.

But appellees insist that the intervener does not come within the category of the ordinary surety, because it was a surety for hire, was paid for the risk which it assumed, became an insurer in effect, and cannot be permitted, now that it has had to answer according to the condition of the bond, to itself resort to the guaranty fund for recoupment.

The question, upon analysis, falls naturally into two parts. First, is there anything in the bank guaranty law which in terms proscribes such a transaction as this, or is there anything in a deposit made under such circumstances that in equity removes such a deposit from the protection of the guaranty fund? Second, what is there in the situation here presented, outside of the fact that the surety was a surety for hire, that bars the intervener from subrogation? Considering the first, there is nothing in the text of the law, or in its contemplation, so far as we can discover, to ban the transaction or to cast suspicion upon it. The deposit can be nothing else than a deposit. Its character was not changed by the additional safeguard of the bond. The protection of the guaranty fund attached to it immediately it left the hands of the agency superintendent and became a deposit of the bank. No harm is

done to the bank by maintained or increased deposits and no injury results to the guaranty fund thereby, wherefore the deposit in question injects the situation with no countervailing equity to relieve the fund from its duty to protect it. This depositor of this money had recourse to the guaranty fund.

This brings us to the second inquiry. The contract was in suretyship. It was so denominated in the bond. The intervener signed as a surety. The requirement of the United States was a suretyship. The contract was not a policy of insurance whereby the company was to pay the United States without recourse. Appellees concede in their brief that the surety company has recourse upon the bank, having paid for the bank. How? Through subrogation to the right of the United States is the only possible way. And since the United States had in that very connection, as we have seen, a right of recourse to the guaranty fund, why should the right of subrogation be abridged in regard to that? Manifestly there is no reason why that should be, since no condition interposes to check the operation of the equitable doctrine of subrogation. The fact that the surety is paid will not do it. That fact does not destroy the inherent nature of suretyship, nor deprive it of its peculiar remedy, which is subrogation. Subrogation follows equity, and it is only where it will be inequitable to permit it to function where it ordinarily does function that its automatic operation is denied. The paid surety is as much entitled to subrogation as the unpaid surety unless some equity intervenes.

It must be clear that the guaranty fund protection of the deposit which was to be made was in the contemplation of the parties when the surety company entered upon its suretyship. It was paid for that suretyship, but the terms, as to amount, were made upon the theory that the deposit carried the protection of the fund and that it, the surety, would stand in the shoes of the depositor.

If it were alleged and proved, or if it in any wise appeared, that there was collusion between the bank and the

surety, whereby the money, when deposited, was to be made way with, or whereby the bank was to receive the money on deposit when by law it could not receive deposits because it was in a failing condition, or whereby the guaranty fund was to be injured or endangered, then there would be reason for denying appellant the subrogation upon which it depends. Nothing of the kind is in the record. We are satisfied that the United States was entitled to resort to the guaranty fund for the repayment of its deposit, and that when the appellant paid the United States it became subrogated to the latter's right in that regard. The appellant was entitled to have its claim satisfied from the guaranty fund. The trial court was in error in adjudging otherwise. The decree should be reversed.

The many cases cited by the appellees in their brief have been examined with care, so far as possible. One of them is not to be found from the citation. One of them is a damage case not touching, even remotely, any question involved in this case. One or more decide that an ambiguous contract of suretyship must be construed against the party drawing it. Others are authority for the familiar rule that the paid surety is less a favorite of the law than a surety not paid. One holds that the bond must be strictly construed where an employer sues a surety company on its bond given to indemnify against embezzlement by an employee. In at least three of them the surety company fails of getting relief when suing as subrogated to the county's right, because the bank, which had bought spurious certificates issued by a crooked county auditor and cashed them at the county's treasury, was an innocent purchaser of said certificates. The surety company had gone the auditor's bond, and had so far put him in a position to work the fraud, hence it, and not the bank, must suffer.

For instance, in the case of *American Bonding Co. v. State Savings Bank,* 47 Mont. 332, a deputy clerk of the district court furnished a surety bond for his faithful performance and account. He issued jury certificates to persons that did not exist. The bank bought them and afterwards cashed

them at the county treasurer's office. The treasurer, upon discovery of the fraud, sued the surety company and re- covered. The surety company thereupon sued the bank, alleging a right of subrogation. But the court held that the bank was innocent in its purchase of the certificates, and said that as between the surety and the bank it did not appear that in equity and good conscience the bank ought to suffer the loss. It is obvious that in such cases a fraud and a resulting equity intervene to prevent the effective operation of subrogation. Nothing of the kind can be found in this record.

In another case much relied upon, *Hormel & Co. v. Amer- ican Bonding Co.*, 112 Minn. 288, there was a building bond issued by the bonding company. The contractor failed to pay certain liens, whereby the owner was compelled to make payment. The owner brought suit against the bond- ing company, and the court held that as between the own- er and the bonding company the relation was that of in- surance, and the construction most favorable to the owner would be adopted. We cannot see where the case is of any particular value on the question of subrogation.

In the first case cited upon the point, *Columbia Bank & Trust Co. v. United States Fidelity & Guaranty Co.*, 33 Okla. 535, recoupment to the surety company from the bank guaranty fund was not permitted because the surety company's bond had been for the securing of a deposit of permanent school fund moneys of the state of Oklahoma, and the statute expressly provided with respect to deposits of such school moneys that such deposits should be secured only by surety bonds and by other particular named se- curities which did not include the guaranty fund, and only by them. In that case, statute intervened to prevent re- sort to the guaranty fund through the doctrine of subroga- tion, and hence the case is not of value in resolving the question presented in the case at bar.

To go over all of the cases cited in appellees' brief would consume too much space and would serve no useful pur- pose. Suffice to say, the authorities so presented do not

864 NEBRASKA REPORTS. [VOL. 112

State, ex rel. Davis, v. Kilgore State Bank.

militate against the views above expressed.

There can be no dispute as to what a deposit is, and what funds deposited in a state bank are entitled to the protection of the guaranty fund. Our court has passed upon these propositions, holding that public funds in a state bank are secured in the same manner as private funds are secured. This was the holding in *State v. Peoples State Bank*, 111 Neb. 136. A deposit which is protected under the state bank guaranty fund law is a deposit of money placed in the hands of and under the command of the bank. *State v. Farmers State Bank*, 111 Neb. 117; also *State v. Farmers State Bank, ante*, p. 380. A depositor is one who leaves money with a bank on time deposit or subject to check. *Farrens v. Farmers State Bank*, 101 Neb. 285. In *Central State Bank v. Farmers State Bank*, 101 Neb. 210, it is held that the party who in good faith and in the usual course of business places money in a state bank subject to check and not drawing interest at a rate exceeding that fixed by statute, 5 per cent. per annum, has a deposit there under the provisions of the guaranty law, and in case the bank fails his deposit may be made a charge against the guaranty fund. And in connection with this it is to be noted that *Kessler v. Armstrong*, 158 Fed. 744, has defined what the ordinary course of business is by saying that deposits made at the bank on a business day in banking hours are deposits in the ordinary course of business.

In the brief, attention is called to the fact that the bond runs to the United States, instead of to the disbursing officer. But a later provision of federal statute declares only that the bond must be an acceptable bond. We think that the mere fact that, through misunderstanding or inadvertence or lack of knowledge, the bond is to a wrong obligee does not vitiate the bond, and that the bond ought to be upheld notwithstanding it should more properly have been to the disbursing agent. Particularly is this true since there is no ambiguity in intent and substance, and since the bank received the money and both the bank and the guaranty fund had the benefit of the same. *Huffman v.*

*Koppelkom,* 8 Neb. 344; *Thomas v. Hinkley,* 19 Neb. 324; *United States Wind Engine & Pump Co. v. Drexel,* 53 Neb. 771; *Gannon v. Phelan,* 64 Neb. 220.

It remains to consider the contention of the appellant that this deposit is a claim of first priority against all the assets of the bank. We think that it is, despite the argument of the appellees based upon the holding in *Cook County Nat. Bank v. United States,* 107 U. S. 445. The following provisions of the federal statute seem to provide a basis for the claim:

"Whenever the principal in any bond given to the United States is insolvent, or whenever, such principal being deceased, his estate and effects which come to the hands of his executor, administrator, or assignee, are insufficient for the payment of his debts, and, in either of such cases, any surety on the bond, or the executor, administrator, or assignee of such surety pays to the United States the money due upon such bond, such surety, his executor, administrator, or assignee, shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States; and may bring and maintain a suit upon the bond, in law or equity, in his own name, for the recovery of all moneys paid thereon." U. S. Rev. St. (1875) sec. 3468.

." Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." U. S. Rev. St. (1875) sec. 3466.

Even this language might leave us in doubt, since the

deposit in this case was of individual money belonging to the Indians, and not public money of the United States. But the money was in fact deposited by the United States as a guardian of its wards, through its Indian agent or representative, and it would seem that the law is broad enough in its purpose to cover a case of this kind. This view finds support in the case of *United States Fidelity & Guaranty Co. v. Bramwell*, 295 Fed. 331, which involved the deposit of a large amount of Indian funds in the Bank of Klamath Falls. The surety, the fidelity and guaranty company, paid the amount of the deposit to the United States, and then claimed priority over other creditors of the bank. The court said: " The position of the defendant is that the statute giving the United States priority was designed to protect the public revenues, so that the government could sustain its burdens and pay its obligations, and since the debt here in question was for money held by the United States for the use and benefit of the Indians residing on the Klamath Indian Reservation the statute has no application. But it seems to me this is an unwarranted construction of the statute. The language is general and without qualification. It applies to all persons indebted to the United States. The form of the indebtedness is immaterial. *Lewis v. United States*, 92 U. S. 618.

" The debt here in question was due from the bank to the United States, both by the terms of the deposit and the condition of the bond given for its security. The United States was the only party to which the obligation ran, and which could enforce it. It is true the money was held in trust for the use and benefit of the Indians, but that does not make the indebtedness of the bank any the less an indebtedness to the United States. The United States, under the treaty with the Klamath Indians, * * * is the guardian of the Indians on the reservation, and as such supervises and manages their affairs, collects and disburses funds intended for their benefit, and may sue to enforce and protect their rights and obligations; * * * and when it causes money received by it through

its officers for the use and benefit of the Indians to be deposited to its credit in a bank, it is, in my opinion, entitled to priority on account thereof to the same extent as in the case of any other debt due it, and such was conceded to be the law in the recent case of *United States v. Oklahoma,* 261 U. S. 253."

The objection of appellees upon the authority of the *Cook County Nat. Bank* case, *supra,* is well answered by the appellant in its reply brief. The holding in that case was because congress had repealed the statutes as applicable to national banks. But because of that it does not follow that the statutes have been repealed as to state banks.

We are convinced that the debt for which the appellant was surety was one which was due the United States, and that by subrogation, as provided for in section 3468, above quoted, the appellant succeeds to the right of the government, and is entitled to be paid from the bank's assets in advance of any other claim.

Because of the views expressed, the decree of the district court is reversed and the cause is remanded for decree in accordance with the holding of this opinion.

REVERSED.

THOMPSON, J., dissents.