Argued December 15, 1925, affirmed January 19, 1926.

## FIDELITY & DEPOSIT COMPANY OF MARYLAND *v.* STATE BANK OF PORTLAND ET AL.

(242 Pac. 823.)

**States—State has Priority in Payment of Debt Out of Assets of Insolvent Debtor.**

1. State has right, as against all persons not having antecedent lien, to priority in payment of debt due out of assets of insolvent debtor.

**Common Law—Courts are Bound by Applicable Rules of Common Law.**

2. Courts are bound by applicable rules of common law where they have not been modified or abrogated by statute.

**Banks and Banking—Right of State Depositor to Priority in Payment of Claim Out of Assets of Insolvent Bank Held not Affected by Statute.**

3. Right of state as depositor to priority in payment of claim out of assets of insolvent bank *held* not affected by Section 6220, subdivision H, Or. L., giving depositors in general priority.

**Subrogation—Right of Paid Surety to Subrogation is Equal to That of Gratuitous Surety.**

4. Right of paid surety to subrogation to rights of principal is equal to one who entered gratuitously into contract of suretyship.

---

1. Priority of debts and claims of state against insolvent debtor's estate, see note in 4 Ann. Cas. 973.

3. Deposit of public funds as preferred claim against insolvent bank, see notes in 8 Ann. Cas. 116; Ann. Cas. 1916B, 1264. See, also, 3 R. C. L. 644.

**Subrogation—Both Gratuitous and Paid Sureties have All Rights, Remedies and Priorities of Party to Whom They had Paid Debt of Principal.**

5. Both gratuitous and paid sureties have all rights, remedies and priorities of party to whom they have paid debt of principal, whether creditor be sovereign state or private individual.

**Subrogation—Court is Without Power to Hold That Distinction Exists Between Right of Paid and Gratuitous Sureties, Who have Paid Claim of State, to Assets of Insolvent Bank.**

6. Since legislature has made no distinction between rights of paid and gratuitous sureties, who have paid claim of state, to assets of insolvent bank, court is without power to hold that distinction exists.

**Statutes—General Words Do not Include State, Unless State is Expressly Named Therein.**

7. General words of statute do not include state, unless state is expressly named therein.

**Subrogation—Statute Held Inapplicable to Surety Paying Claim of State Against Insolvent Bank.**

8. There being no provision in Section 6223, Or. L., indicating intention to include state, such statute *held* inapplicable to surety, who paid claim of state against insolvent bank.

**Banks and Banking—Claim of Surety Against Insolvent Bank Held not "Rejected" Within Meaning of Statute.**

9. Where surety paid claim of state against insolvent bank, and superintendent of banks treated claim of surety as on parity with claims of other depositors, *held* that such claim was not "rejected" within meaning of Section 6223, Or. L.

---

*Quando Jus Domini* etc., 32 Cyc., p. 1283, n. 15.

Statutes, 36 Cyc., p. 743, n. 81 New, p. 1171, n. 37, p. 1172, n. 38, 40.

Subrogation, 37 Cyc., p. 426, n. 81, 83, p. 431, n. 31.

From Multnomah: GEORGE TAZWELL, Judge.

Department 1.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Bowerman & Kavanaugh,* with an oral argument by *Mr. Jay Bowerman.*

---

5. Subrogation right of surety as affected by fact that he received consideration for becoming surety, see notes in Ann. Cas. 1913A, 565; Ann. Cas. 1918E, 660. See, also, 25 R. C. L. 1327.

7. Applicability to state of general statute not referring to state, see note in Ann. Cas. 1912A, 1214. See, also, 25 R. C. L. 784.

For respondent there was a brief over the name of *Messrs. McCamant & Thompson,* with oral arguments by *Mr. W. Lair Thompson* and *Mr. H. Borden Wood.*

*Messrs. Dey, Hampson & Nelson* and *Mr. George H. Buland, Amici Curiae.*

RAND, J.—On February 16, 1922, the State Bank of Portland, a banking corporation organized under the laws of this state, had become insolvent, and the defendant F. C. Bramwell, as State Superintendent of Banks, took charge of its assets for the purpose of liquidation. At that time, the State of Oregon had on deposit therein various sums of money, which with interest thereon amounted to the total sum of $151,783.35. In order to secure the state for the repayment of these sums, that bank as principal, executed four bonds to the state, on three of which this plaintiff was surety, and on the other, the Hartford Accident & Indemnity Company was surety. Under these bonds, the ratio of plaintiff's liability to that of Hartford Accident & Indemnity Company, was as five to two. Subsequently certain payments were made to the state, which reduced the bank's liability to the state, to the sum of $77,055.41, of which sum this plaintiff paid to the state the sum of $55,040.65, and the Hartford Accident & Indemnity Company paid the remaining $22,014.36, thereby paying the state's claim in full. Thereupon, this plaintiff and the Hartford Accident & Indemnity Company, presented their respective claims to the State Superintendent of Banks and demanded of him that they be given the same priority or preference that the state would have possessed, if its claim had not been satisfied. Upon his refusal to allow said claims as pre-

ferred claims, they each commenced a separate suit, praying that their claims be paid in full out of the assets of the insolvent bank, before paying the claims of the depositors and general creditors of the bank.

The defendant Bramwell filed an answer to the complaint, containing in addition to admissions, denials and affirmative allegations, three separate affirmative defenses. By these affirmative defenses, he alleged in effect: 1—that plaintiff was a paid surety, and is not entitled to be subrogated to the rights of the state, either as against the depositors or unsecured creditors of the bank; 2—that under the statute, depositors of an insolvent bank are given a preference, which when satisfied, in this case, will leave nothing with which to pay the claim of the sureties, and 3—that plaintiff's claim having been denied for more than six months prior to the time when the suit was commenced, its right is lost. To these three affirmative defenses, plaintiff interposed a general demurrer, which was sustained. Defendants declining to plead further, a reply was filed, and from a decree entered in the cause in favor of plaintiff, defendant Bramwell has appealed.

1, 2. With but one exception, every question presented upon this appeal is settled by the decision of this court, in the case of *United States Fidelity & Guaranty Co.* v. *Bramwell,* 108 Or. 261 (217 Pac. 332, 32 A. L. R. 829). In that case we held that the people of this state have succeeded to all of the incidental prerogative rights of the British Crown, which are essential to the efficient exercise of the powers inherent in the nature of civil government. That among the prerogative rights thus preserved, is the right of the state, as against all persons not having an antecedent lien, to priority in payment of a debt due it, out of

the assets of an insolvent debtor. That this right should be preserved, because it is adapted to the necessities of the people, and because its preservation is essential in order to sustain the public burdens, and discharge the public debts. We also pointed out that so far as we could ascertain from the decisions of the courts, but three states denied the possession by the state of its common-law priority right, and that in every case arising in other states than the three mentioned, where the question had been passed upon by the courts, the right was held to exist, either through some legislative enactment, or by judicial decision, and that where there was no statute declaring the right, it existed in such state, by virtue of the common law, and without the aid of statute. Defendant criticises our ruling upon this question, but he advances no argument, or reason why such right is not essential to the welfare of the people of the state, or upon what theory this court has power to waive or abrogate such right. It is our understanding that we are as much bound by the applicable rules of the common law, where such rules have not been modified, or abrogated by statute, as we are by the statutes themselves.

Section 6220, subdivision H, Or. L., provides:

"In the event of the insolvency or bankruptcy of any state bank doing business within the meaning of this act, depositors of such bank shall have a first and prior lien on all the assets of such bank; and in the distribution of such assets or the proceeds thereof, the payment shall be first applied to satisfy the amount due such depositors after the payment of expenses of liquidation of any such bank. Provided, however, that this section shall not apply to assets pledged as collateral security for money borrowed."

It is contended that because of these provisions, depositors have an antecedent lien, which deprives the state of its priority right. The effect of the statute was considered, although not expressly referred to in *United States Fidelity & Guaranty Co.* v. *Bramwell, supra.* This particular subdivision of the statute was construed in *Upham* v. *Bramwell,* 105 Or. 597, 613 (209 Pac. 100, 25 A. L. R. 919), where it was held:

"The statute does not create a lien in favor of the depositors in the sense that it gives a vested right or interest in such assets, but rather provides rules of distribution and priority among creditors respecting the assets of insolvent banks."

3. Whether the effect of this statute is merely to provide rules of distribution and priority among creditors, or whether it gives a specific lien and security to the depositors over other creditors the state was one of such depositors, and under the statute was equally entitled to the benefit of the lien. The right of the state to priority over other depositors is clear, since its claim against the bank was of equal dignity and standing with theirs. This necessarily results from the application of the common-law maxim that, "where the title of the King and the title of a subject concur, the King's title must be preferred." Broom's Legal Maxims, 55, It was always a rule of the common law, that where the King's title or that of the subject concur, or are in conflict, the King's title should be preferred, and applying this rule to the present case, the state is entitled to priority, and this right is not affected by the provisions of the statute above referred to.

The purpose, however, of this appeal is not to test the effect of this statute upon the state's right to

have its claims first paid in full from the assets of an insolvent bank, or upon the right of a surety who has paid the state's claim to subrogation, but is for the sole purpose of obtaining a decision overruling our former decision in the case of *United States Fidelity & Guaranty Co.* v. *Bramwell, supra.* In seeking that result in the present case, we do not question the good faith or sincerity of the defendant, or his counsel, since the real basis for the appeal is the supposed unfairness of permitting a paid surety to recover the amount paid the state after having been paid a premium by the bank for assuming the risk.

In *Wasco County* v. *New England E. Ins. Co.*, 88 Or. 465 (172 Pac. 126), this court said:

"The fact that the insurance company is a compensated surety does not affect its right to claim the benefits of subrogation. * * A court of equity grants the right of subrogation because the surety has paid the debt of the principal, and the right of subrogation is not dependent upon whether the surety was or was not paid to sign the bond. It is enough that the surety was obliged to pay and did pay the debt: *Lewis' Admr.* v. *United States Fidelity & Guaranty Co.*, 114 Ky. 425 (138 S. W. 305, Ann. Cas. 1913A, 564); *National Surety Co.* v. *Berggren,* 126 Minn. 188 (148 N. W. 55)."

4-6. There is no distinction between the right of a paid surety to subrogation and one who has entered gratuitously into a contract of suretyship. Both are clothed with all their rights, remedies, priorities and securities of the party to whom the debt of the principal was paid, and stand in his shoes, whether the creditor be a sovereign state or a private individual. This arises from the universal application by courts of equity of well-settled principles of equitable jurisprudence, defining the rights of a subrogee. As the

law makes no distinction between them, this court is powerless to hold that any distinction exists. If the present law works an injustice to the depositors of an insolvent bank, we can only call attention to the fact that since our former decision, one regular session of the legislature has been held, and no effort seems to have been made to correct the injustice of the present law, if such exists. It is within the power of the legislature to define what rights a paid surety who has paid the claim of the state shall have in the assets of an insolvent bank; we have no such power, and must interpret the law as we find it.

That our conclusion in the former case accords with that of other courts is demonstrated by the fact that no decision has been called to our attention, wherein a contrary ruling has since been made, while a like conclusion was reached in the following cases which have since been decided: *State* v. *Madison State Bank,* 68 Mont. 342 (218 Pac. 652); *United States Fidelity & Guaranty Co.* v. *Central Trust Co.,* 95 W. Va. 458 (121 S. E. 430); *Maryland Casualty Co.* v. *McConnell,* 148 Tenn. 656 (257 S. W. 410); *In re Marathon Sav. Bank,* 198 Iowa, 692 (196 N. W. 729, 200 N. W. 199); *In re Bank of J. Kelso,* 198 Iowa, 946 (200 N. W. 492); *United States Fidelity & Guaranty Co.* v. *Rathbun,* 160 Minn. 176 (199 N. W. 561); *State* v. *Kilgore State Bank,* 112 Neb. 856 (201 N. W. 901); *United States Fidelity & Guaranty Co.* v. *Bramwell,* 295 Fed. 331 (affirmed 299 Fed. 705); *City and County of Denver* v. *Stenger,* 295 Fed. 809.

By his third affirmative defense, defendant Bramwell pleads that more than six months elapsed after plaintiff's claim for a preference had been denied before the commencement of the suit. Section 6223, Or. L., provides:

"If the Superintendent of Banks doubts the justice and validity of any claim he may reject the same and serve notice of such rejection upon the claimant * * An action upon a claim so rejected must be brought within six months after such service."

7, 8. The wording of the statute has no application to a claim of the state. This results from the principle, that general words of a statute do not include the state, unless the state is expressly named therein. Since the state, not being expressly named in the statute, could not be affected by the statute, a surety who paid the state's claim, and who thereby became entitled to be substituted to all of the rights, remedies, privileges, claims, priorities and preferences of the state, would not be affected unless there is some clause or provision in the statute indicating a legislative intent that such a result should follow. Nothing indicating such an intent appears in the statute.

9. Notwithstanding that it is alleged in defendant's answer, that plaintiff's claim for a preference was presented and disallowed, and notice thereof given and served, and that suit was not brought within six months thereafter, other facts are alleged that show, that subsequent to such alleged disallowance, the Superintendent of Banks treated the claim as on a parity with the claims of other depositors, and made payments thereon accordingly. This shows that it was the claim of preference only, and not the claim itself which was disallowed, and hence it was not a rejected claim within the meaning of the statute. Upon this point, defendant although expressly stating in his brief that he had not abandoned it, did not deem the matter of sufficient importance to make it the subject of discussion, nor was the point argued upon the hear-

ing here. Other points are raised by defendant, but they were all considered and passed upon in the former Bramwell case, and are now controlled by the decision in that case.

From this it follows that the decree must be affirmed, and it is so ordered.   AFFIRMED.

McBRIDE, C. J., and BURNETT and COSHOW, JJ., concur.