State, ex rel. Davis, v. State Bank of Gering.

STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL, V. STATE BANK OF GERING.
NATIONAL SURETY COMPANY OF NEW YORK, CLAIMANT, APPELLANT, V. STATE BANK OF GERING ET AL., APPELLEES.

FILED DECEMBER 31, 1925.    No. 24430.

1. **Banks and Banking:** GUARANTY FUND: LIABILITY. "Where a county treasurer deposits public funds in a state bank in excess of 50 per cent. of the paid-up capital stock of said bank, the entire deposit is within the protection of the depositors' guaranty fund." *State v. Peoples State Bank,* 111 Neb. 136.

2. ————: ————: RIGHTS OF SURETY. Where a surety bond is given by a state bank to a county to secure the return to the county treasurer of money deposited by the latter in excess of 50 per cent. of the capital of said bank, and where such bank fails and a receiver is appointed to wind up its affairs, and where the surety, on demand of the county treasurer, pays to the latter the amount of liability on the bond and takes from the county treasurer an assignment of the rights and remedies of the treasurer, to the extent of the amount paid by the surety, the latter is entitled in a proper proceeding to have the amount paid allowed as a preferred claim against the bank and paid out of the guaranty fund.

APPEAL from the district court for Scotts Bluff county: P. J. BARRON, JUDGE. *Reversed, with directions.*

*Honnold & Clark* and *J. M. Fitzgerald,* for appellant.

*C. M. Skiles* and *Mothersead & York, contra.*

Heard, before Morrissey, C. J., Day, Good, Thompson and Eberly, JJ.

Day, J.

The State Bank of Gering, located at Gering, Nebraska, became insolvent and closed its doors September 28, 1922. Thereafter in a proper proceeding a receiver was duly appointed to take charge of the assets of the bank and to wind up its affairs. During the course of the receivership the National Surety Company of New York filed a claim with the receiver for $10,764.02 and asked that it be allowed as a preferential claim and paid out of the guaranty fund. The receiver objected to the claim being allowed as a preferred claim. At the conclusion of the testimony the trial court refused the claim as a preferred claim, but allowed it as a general claim. From this judgment the claimant has appealed.

At the time the bank failed P. M. Schmidt, the county treasurer of Scotts Bluff county, had on deposit in the bank, in his official capacity, $49,505.02.

It appeared that on June 8, 1921, the State Bank of Gering, as principal, and the National Surety Company of New York, as surety, executed a bond in favor of the county of Scotts Bluff in the sum of $10,000. Generally speaking, the provisions of the bond were to indemnify the county for money deposited in the bank by the county treasurer in excess of 50 per cent. of the paid-up capital of the bank; that the bank would pay 2 per cent. interest on the amount, based on the average daily balances, and would pay the entire sum upon the written demand of the county treasurer.

At the time of the failure of the bank, and during the term of the bond, the county treasurer had on deposit in the bank $49,505.02 of public money belonging to the county, of said sum $33,255.06 was money in excess of 50 per cent. of the capital stock of the bank and was money protected by the bond to the extent of the amount of the bond.

Schmidt, as county treasurer, filed a claim with the receiver for $49,505.02 and asked that it be allowed as a

VOL. 114]    SEPTEMBER TERM, 1925.    215

State, ex rel. Davis, v. State Bank of Gering.

preferred claim and paid out of the guaranty fund. On March 19, 1923, the court allowed the county treasurer $16,250 as a preferred claim, the same being 50 per cent. of the paid-up capital and surplus of the bank. It was evidently the theory of the court that the amount of deposits which the county treasurer could legally make, and which would be protected by the guaranty fund, was limited to 50 per cent. of the capital stock and surplus of the bank. As to the balance the court withheld its judgment, but later refused to allow the same as a preferred claim.

On February 5, 1924, the county treasurer made demand upon the surety for the amount for which it was liable on the bond, to wit, $10,764.02, which sum the surety then paid to the county treasurer. Thereupon the county treasurer delivered to the surety a written assignment, whereby he sold, assigned and transferred to the surety the sum of $10,764.02 on deposit in the bank and thereby subrogated the claimant to all its rights and remedies against the bank with respect to said sum. The claim of the surety company is based on the assignment, as well as upon the equitable doctrine of subrogation.

It is first urged by the receiver that the amount of the deposit in excess of 50 per cent. of the capital stock of the bank is not protected by the guaranty fund, and the court having allowed the claim of the treasurer up to that amount, no further sum could be legally allowed as a claim against the guaranty fund. Under the decisions of this court this position is no longer tenable. The same proposition was urged in *State v. Peoples State Bank*, 111 Neb. 126, and in an opinion prepared by the writer and adopted by a divided court it was held:

"Where a county treasurer, in violation of section 6193, Comp. St. 1922, deposits county funds in a state bank, in excess of 50 per cent. of the capital stock of such bank, the depositors' guaranty fund is not liable for such excess."

In that case a rehearing was granted, and in an opinion adopted by a divided court (111 Neb. 136) the former opinion was vacated and set aside, and it was held:

"Where a county treasurer deposits public funds in a state bank in excess of 50 per cent. of the paid-up capital stock of said bank, the entire deposit is within the protection of the depositors' guaranty fund."

We think this last announcement must be regarded as the settled rule in this state. Under this rule the entire sum deposited by the treasurer was under the protection of the guaranty fund. The treasurer would have been within his rights in demanding and receiving the entire sum from the guaranty fund. Instead of doing this he demanded and received from the surety company $10,764.02, which he claimed was due under the terms of the bond, and in return assigned to the claimant all his rights and remedies against the bank with respect to said sum of $10,764.02 and released the surety from further liability.

It is not clear how the sum of $10,764.02 was arrived at, but, as we view it, it is immaterial. The treasurer, as well as the county, had the right to sell their claim or any part of it to any person who was willing to buy. By the transaction the claimant became the assignee *pro tanto* of the entire claim of the treasurer and the county.

Considerable argument is made on the proposition as to whether the surety is subrogated to the rights of the obligee by paying the bond. Inasmuch as the claimant is the owner of the claim by an assignment of the interest of the treasurer and the county, to the extent of $10,764.02, the question of equitable subrogation may be immaterial. It may not be out of place, however, to say that in a recent case we held that a surety on a bond given by a state bank to secure a deposit is subrogated to the rights of the depositor of such money when he has paid the amount due on such deposit. *State v. Kilgore State Bank*, 112 Neb. 856. In that case it was also said that a paid surety is as much entitled to subrogation as an unpaid surety, unless some equity intervenes. The decisions to which reference has been made completely answer the objections of the receiver to the allowance of the claim.

In fairness to the trial court, as well as to the counsel

for the receiver, it may be said that the decisions of this court which are controlling in this case were not published at the time the claim was disallowed by the trial court.

From what has been said it would seem to follow that the claimant as assignee of the treasurer and the county was entitled to have his claim of $10,764.02 allowed as a charge upon the guaranty fund.

The judgment of the district court is reversed and the cause remanded, with directions to enter judgment conforming to the views expressed herein.

REVERSED.

Note—See 7 C. J. sec. 15 (Ann.).