### SHAW, Banking Com'r, et al. v. UNITED STATES FIDELITY & GUARANTY CO.

### No. 1297—5784.

Commission of Appeals of Texas, Section B.

April 21, 1932.

John W. Goodwin and Joe T. Goodwin, both of Austin, for plaintiffs in error.

Seay, Seay, Malone & Lipscomb, of Dallas, for defendant in error.

### LEDDY, J.

The State Bank of Commerce, a banking corporation incorporated under the laws of this state, was duly designated as a state depository. In compliance with the statute, it executed a depository bond, conditioned as required by law, with defendant in error as surety thereon. Subsequently this bank closed its doors because of insolvency, and was placed in the hands of the state banking commissioner for liquidation. At the time it closed, the state of Texas had on deposit the sum of $10,532.20. Defendant in error, as surety on the depository bond, upon demand, paid the state the full amount of its claim against said bank, and presented its claim for reimbursement, as a preferred claim, to the banking commissioner. The commissioner refused the claim as not being entitled to priority in payment over general creditors of the bank. Defendant in error thereupon instituted this suit to establish such claim as entitled to preferential payment out of the assets of said bank.

Briefly stated, defendant in error contends that its claim against said bank was entitled to priority of payment over other creditors for the following reasons:

(1) That at common law the sovereign had the absolute right to priority in payment of debts due it by an insolvent debtor as against the claims of general creditors.

(2) That the state of Texas, as sovereign, succeeded to this common-law right when it, on January 20, 1840, adopted the common law of England as the rule of decision in this state.

(3) That the state of Texas has not by subsequent legislative action, in adopting the banking laws, the depository laws, or any other legislation, either expressly or impliedly, repealed or modified this common-law rule.

(4) That under the banking laws of this state no such title to the assets of the insolvent bank passed to the banking commissioner as would defeat the state's right to priority in payment of its claim.

(5) That the state treasurer has not and could not waive the state's right to priority by the mere filing of the state's claim as a common creditor with the banking commissioner.

(6) That the defendant in error, having under compulsion paid the state's claim in full, is entitled to stand in the identical position of the state, and is therefore privileged to assert and enforce the state's right to priority in payment of the debt due it by said bank.

■ At the outset it may be stated that it is conceded by all parties that under the common law of England one of the prerogatives of the sovereign was the right to have debts due him by an insolvent person paid in preference to the rights of general creditors whose claims were not secured by valid liens.

The question as to whether the state of Texas in adopting the common law succeeded to this royal prerogative is one of first impression in this state. It is, however, neither new nor novel in the jurisprudence of the country, as the courts of many states have had occasion to pass upon and determine this question. While there are a few decisions to the contrary, the overwhelming weight of judicial authority in other jurisdictions supports the proposition that the adoption by a state of the common law of England carries with it the sovereign prerogative, entitling the state to priority in payment out of the effects of an insolvent debtor. United States Fidelity & Guaranty Co. v. Bramwell, 108 Or. 261, 217 P. 332, 32 A. L. R. 829; Fidelity & Deposit Co. v. State Bank, 117 Or. 1, 242 P. 823; Booth v. State, 131 Ga. 750, 63 S. E. 502; Central Bank & Trust Corp'n v. State, 139 Ga. 54, 76 S. E. 587; Maryland Casualty Co. v. McConnell, 148 Tenn. 656, 257 S. W. 410; Woodyard v. Sayre, 90 W. Va. 295, 110 S. E. 689, 24 A. L. R. 1497; United States Fidelity & Guaranty Co. v. Central Trust Co., 95 W. Va. 458, 121 S. E. 430; American Surety Co. v. Pearson, 146 Minn. 342, 178 N. W. 817; U. S. Fidelity & Guaranty Co. v. Rathbun, 160 Minn. 176, 199 N. W. 561; Fidelity & Deposit Co. of Maryland v. McClintock, 68 Mont. 342, 218 P. 652; United States Fidelity & Guaranty Co. v. Carnegie Trust Co., 161 App. Div. 429, 146 N. Y. S. 804; Matter of Carnegie Trust Co., 151 App. Div. 606, 136 N. Y. S. 466; Id., 206 N. Y. 390, 99 N. E. 1096, 46 L. R. A. (N. S.) 260; State of Maryland v. Bank of Maryland, 6 Gill & J. 205, 26 Am. Dec. 561; Orem v. Wrightson, 51 Md. 34, 34 Am. Rep. 286.

The basis for the holding that a state in adopting the common law of England succeeded to the prerogative of the sovereign so as to entitle it to have a debt due by an insolvent established as prior in payment to other debts due general creditors is most clearly set forth in the leading case of United States Fidelity & Guaranty Co. v. Bramwell, 108 Or. 261, 217 P. 332, 335, 32 A. L. R. 829. The question under consideration is elaborately discussed by the Supreme Court of Oregon, and the authorities are exhaustively reviewed. In setting forth the reason sustaining the conclusion reached by that court, it said:

"It is clear that none of the royal prerogatives of the first class mentioned by Blackstone—that is to say, those direct prerogatives which appertained to the royal character and authority of the king and sprung from his political person—are adapted to or suitable for our needs or conditions, and hence the common-law rules by which those prerogatives were established and maintained are not in force in this state. But those incidental prerogatives which had no relation to the king's person and constituted exceptions in favor of the crown to general rules applicable to every one else, and which, from their very nature, are essential to the welfare of the people of the state, have been adopted, and the common-law rules by which these rights were established, have become the law of the state. Among those so adopted are the common-law rules that general words in a statute do not include the state unless the state is expressly named therein; that the state cannot be sued without its consent; that the statute of limitations does not run against the state in the absence of a statute permitting it; that a debt due to the state is preferred over that of any one else not having an antecedent lien, and the like. To all of the incidental prerogative rights of the British Crown, which are essential to the efficient exercise of the powers inherent in the nature of civil government, the people of this state have succeeded.

"The preference right of the state to priority in payment out of the effects of an insolvent debtor is based upon the common law and requires no statute for its support. The existence and enforcement of the right are necessary for the protection of the public revenue. That the right would be of essential importance to the state if both the depositary bank and the surety company should become insolvent is obvious. The right is therefore one that is adapted to the circumstances, conditions, and necessities of the people because essential to sustain the public burdens and discharge the public debts, and unless some provision of statute can be found which clearly evinces a legislative intent to abandon or waive this preference right of the state it is the duty of the courts to preserve rather than to defeat it."

■ Plaintiff in error asserts that, even if it be conceded that the common law, giving the state the right of priority in payment of debts owing it, has been adopted in this state, the subsequent adoption of the state depository law modified such rule in so far as it applies to deposits secured in the manner required by said law. A proper determination of this question requires a brief review of the legislation upon this subject.

The first depository law was contained in

chapter 164 of the Acts of 1905, p. 387. Under this act both state and national banks desiring to obtain the deposit of state funds were required to submit bids to the state treasurer. The act provided that, before such officer should deposit state funds in any bank so selected as a state depository, he should require such bank to execute a bond in the sum of $25,000, and, in addition thereto, to deposit as collateral security United States, county, independent school district, or municipal bonds in the sum of $50,000. No bank was permitted to keep more than $50,000 of state funds on deposit under said act. It was further provided that, if at any time the bonds deposited as collateral by a bank qualifying as a state depository were not satisfactory security to the comptroller, Attorney General, and treasurer of this state, they might require such additional security to be given as would be satisfactory to them. In the event of a failure of a depository bank to pay the state deposit, or any part thereof, upon demand, such officers were empowered to immediately convert such security into cash.

By the Act approved April 12, 1907, 30th Legislature, p. 183, c. 90, the former act was amended in material respects. It permitted any bank, state or national, to be awarded the keeping of two thirty-firsts of the amount of state funds, not exceeding, in any instance, the sum of $100,000. It provided that any bank qualifying for such deposit must deposit securities with the state treasurer of the same class and character as defined in the act of 1905, and in double the value, and it was required to give an indemnity bond of similar character and in double the amount required for depositories selected under another section of the act relating to senatorial districts.

In the codification of 1911 (articles 2423–2425), the amount of state funds to be deposited in any one bank was limited to $50,000, and the same provision was carried as to the execution of a bond for $25,000 and deposit of $50,000 of the class of securities required by the act of 1905.

By an Act approved February 24, 1923, being chapter 34, Acts 38th Legislature, p. 60, all former provisions creating state depository laws, together with the amendments thereto, were expressly repealed. Under the provision of this new act, all banks in order to qualify as a depository for state funds, in any amount not to exceed $100,000, could do so by executing a bond signed by a solvent surety company equal to not less than double the amount of the state funds allowed to it, or by depositing with the state treasurer securities of a par value of 15 per cent. greater than the amount of state funds so deposited, such securities to be bonds and certificates of indebtedness of the United

States, bonds of the Federal Land Bank located in Texas, bonds of counties, independent school districts, common school districts, municipal corporations, and vendor's lien notes secured by first lien on real estate of the value, exclusive of improvements, of at least double the amount of such notes. The state depository board was specifically authorized to reject, without assigning any reason therefor, any or all collateral or any surety bond tendered by a state depository, and it was provided that its action in doing so should not be subject to review.

An inspection of the provisions of the various state banking laws regulating the liquidation of insolvent state banks does not reveal any provision which makes any reference to a right of priority in payment on behalf of the state over other depositors in insolvent state banks.

It thus appears that the state has enacted a complete system of laws regulating state banks and providing for their liquidation. Such laws do not contain any recognition by the Legislature of a right of priority in payment of state deposits over other creditors in insolvent banks. In addition to this, it has enacted, through a long period of years, various depository laws. In each of such enactments, the Legislature, wherein it provided for security for state deposits, has exhibited a very high degree of care in making provision to safeguard the payment of such deposits held by a state or national bank. In each instance the security required goes far beyond that which would ordinarily be considered necessary if the state by reason of its sovereignty was entitled to preference in payment over other depositors in the event of insolvency of the depository bank. It would seem that, if the Legislature did not intend to modify the state's right of priority in payment of its deposits, it has been unusually severe and exacting in the character of security required for such deposits. The attitude of the Legislature in making these stringent requirements of banks holding state funds is utterly inconsistent with the idea that such requirements were intended to be merely cumulative of the state's right of priority in payment over other depositors. The provision for the kind of security required is only consistent with the view that it was intended the state should solely rely upon the full, complete, and adequate security for its deposits made by the provisions of the depository law.

There is another substantial reason why we think the Legislature contemplated the modification of the common-law rule of priority of payment in so far as it applies to deposits of state funds in banks. Several years prior to the enactment of the first depository law in this state, the Supreme Court of the United States, by its decision in the

case of Davis v. Elmira Savings Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700, denied the power of any state to create a priority in the assets of national banks not recognized by the statutes of the United States. We must presume that the Legislature of this state was familiar with this decision, and knew that the state by the adoption of the common-law right of priority could not apply such rule to the payment of debts owing to it by national banks. If the Legislature did not purpose, in enacting the depository law, to modify such common-law rule, then it is placed in the unenviable position of deliberately so legislating as to place banks, organized under the laws of this state, at a serious disadvantage in operating in competition with national banks. The Legislature is bound to have known that it would be extremely difficult for state banks to obtain depositors if it was known that they were subject to the hazard of losing their deposits, or a substantial portion thereof, in case of insolvency on account of such banks being required to pay the state deposits in full when no such requirement was or could be made applicable to national banks, although they are allowed to become state depositories.

We do not think it fair to ascribe a deliberate purpose to the Legislature to so legislate as to discriminate against state banks in such a way as to place them at a decided disadvantage in competing with national banks. It would be more reasonable to assume that the Legislature, by making the unusually strict provisions for security of state deposits, contemplated that state banks would be placed upon the same basis in this regard as national banks, and that the state in regard to its deposits would look alone for any advantage over other depositors to the collateral security required by the provisions of its depository laws.

While the authorities in other jurisdictions are sharply conflicting upon the subject, we think the better reasoned cases support the view that the enactment of a depository law requiring state funds to be deposited in state depositories, with provision for ample security, operates as a waiver of the state's right of priority in payment of its deposits out of the assets of a depository bank. Maryland Casualty Co. v. Rainwater, 173 Ark. 103, 291 S. W. 1003, 51 A. L. R. 1332; National Surety Co. v. Pixton, 60 Utah, 289, 208 P. 878, 24 A. L. R. 1487; National Surety Co. v. Morris, Receiver, 34 Wyo. 134, 241 P. 1063, 42 A. L. R. 1290; United States Fidelity & Guaranty Co. v. McFerson, 78 Colo. 338, 241 P. 728; Smith v. Arnold, 165 Ky. 214, 176 S. W. 983; Re

Central Bank, 23 Ariz. 574, 205 P. 915; Re Holland Banking Co., 313 Mo. 307, 281 S. W. 702, 708.

One of the latest cases sustaining the conclusion we have reached is that of Re Holland Banking Company, above cited. This case was decided by the Supreme Court of Missouri. Chief Justice Blair rendered an able and exhaustive opinion, in which he elaborately reviewed the authorities upon both sides of this question. After doing so, he thus states the conclusion of the court: "We are satisfied that the decided trend of the better reasoned cases is to the effect that, where a state has a general statute giving priority to the debts due the state, or where the common law to the same effect is recognized, and where such state also has a depository law directing the deposit of the state's funds in selected depositories, which are required to give full and adequate security equal to or in excess of such deposits as may lawfully be made therein, and where no preference over and above the protection of such security is specifically provided for in such depository law, the state will be deemed to have waived its priority rights under the general priority statute or the common law as the case may be, and will be required to look to the security taken by it for the repayment of such deposits, and can only come in on a parity with general creditors for a distributive share of the unpledged assets of the insolvent depository after it has exhausted the security taken by it and applied same upon its debt."

We conclude that the adoption of the depository law effectually prevents the state from claiming against an insolvent state bank a right of priority in payment of a deposit made by it which is secured in the manner required by said law.

We desire to commend counsel on both sides of this case for the splendid manner in which they have presented the legal questions in their respective briefs. The briefs are models for clearness and conciseness. Such presentation has lessened in a large degree the labors of the court in reaching a decision in the case.

We therefore recommend that the judgments of the trial court and the Court of Civil Appeals be reversed, and that judgment be here rendered in favor of plaintiff in error.

CURETON, C. J.

Judgments of the District Court and Court of Civil Appeals reversed, and judgment rendered for plaintiffs in error.