IN BANC.
Proceeding, in the matter of the liquidation of the Bank of Woodburn, by the American Surety Company of New York, claimant, against A.A. Schramm, superintendent of banks and liquidator of the Bank of *Page 650 
Woodburn, in liquidation. From a decree, sustaining a demurrer to the complaint and dismissing the suit upon claimant's refusal to plead further, claimant appeals.
REVERSED.
This proceeding was instituted by the American Surety Company of New York by the filing in the Circuit Court for Marion county of a petition in the nature of a complaint to compel A.A. Schramm, the state superintendent of banks, to pay first out of the assets of the Bank of Woodburn, an insolvent bank, a debt due to the United States which had been assigned to the plaintiff. The petition was challenged by demurrer upon the ground, (1) that there was a defect of parties plaintiff; (2) that the court had no jurisdiction to grant the relief sought; and (3) that it did not state facts sufficient to constitute a cause of suit. The demurrer was sustained, and plaintiff having refused to plead further, a decree was entered dismissing the suit, from which the plaintiff has appealed.
It is alleged in the petition in substance and admitted by the demurrer that on August 7, 1933, the Commissioner of Indian Affairs of the United States had on deposit in the Bank of Woodburn $4,750 of Indian moneys upon which certain unpaid interest charges had accrued; that the bank had given a bond to the United States with plaintiff as surety to secure the payment of the deposit with interest thereon to be computed on daily balances; that on that day the bank had *Page 651 
become insolvent and suspended payment and defendant, as superintendent of banks, had taken possession and control of its property and business for the purpose of liquidation; that thereafter and on October 20, 1933, the Commissioner of Indian Affairs filed with the defendant as superintendent of banks proof of the claim of the United States for the amount of the deposit with interest and demanded that payment thereof be first made out of the bank's assets prior to the payment of any unsecured or unpreferred claims; that, in passing upon said claim, the defendant denied that the United States was entitled to any priority and allowed the claim as one not preferred; that on March 10, 1934, the Commissioner of Indian Affairs demanded of the bank and of the plaintiff the immediate payment of said claim and, upon defendant's refusal to pay the claim, this plaintiff, in compliance with the terms of its bond, paid to the United States the sum of $4,866.38, which was the amount of said deposit with interest, and took an assignment of said claim from the United States; and that there were sufficient assets belonging to said bank and under the control of the defendant to pay said claim in full had the same been allowed and paid as a preferred claim; that subsequent to the making of said payment by the plaintiff, the plaintiff applied to the defendant for a reconsideration of his order denying that the claim of the United States was entitled to any preference of priority over the unsecured and unpreferred creditors of the bank and requested that plaintiff's claim for the amount it had paid be allowed as a preferred claim. This application by the plaintiff was likewise denied by the defendant upon three grounds which may be summarized as follows: (1) that the United States had not asked for any reconsideration of its claim; (2) that the application *Page 652 
therefor was not made within the time limited by law and the former order rejecting the claim had become final for the reason that no appeal therefrom had been taken within the time limited by the code; and (3) that the defendant as superintendent of banks had no discretion or authority to waive any of the requirements of the statute in respect to his duties as superintendent of banks.
It clearly appears from the petition that no appeal from the decision of the superintendent of banks, denying priority to the United States of its claim, was taken within the time fixed by the statute of this state and, hence, if the rights of the United States and of its assignee, the plaintiff, in respect to these moneys are to be controlled by the Oregon laws, the action of the trial court in sustaining this demurrer and in denying any relief to plaintiff was proper. The rights of the United States, however, in respect to its own moneys must be determined from the acts of congress and from the decisions of the federal courts and not by the local laws of the state in which they may be kept. This follows necessarily from the dual form of our government, where each is supreme within its own sphere. This and other questions pertinent to this inquiry were stated by Mr. Chief Justice Marshall in Field v. United States, 9 Pet. (34 U.S.) 182 (9 L.Ed. 94), as follows:
"The first objection now taken by the plaintiffs in error, is, that the order of the parish court, confirming the tableau of distribution, was the judgment of a court of competent jurisdiction, in favor of each creditor whose debt was therein stated; and that the syndics were obliged to pay the proceeds of the sale to such creditors; and the United States not being named as creditors therein, can have no right to the fund against the other creditors. If, at the time of the confirmation of this tableau of distribution, no debts due to the *Page 653 
United States had been known to the syndics, and they had, in ignorance thereof, made a distribution of the whole funds among the other creditors, that might have raised a very different question. But in point of fact, it has not been denied that the syndics, long before that period, had notice of the existence of the debts due to the United States; and the present suit was commenced against them in the preceding March. The United States were, it is true, not parties to the proceedings in the parish court, nor were they bound to appear and become parties therein. The local laws of the state could not, and did not, bind them in their rights. They could not create a priority in favor of other creditors, in cases of insolvency, which should supersede that of the United States. The priority of the latter attached by the laws of the United States, in virtue of the assignment and notice to the syndics of their debts. And it was the duty of the syndics to have made known those debts in their tableau of distribution as having such priority."
It was held in Bramwell v. United States F. G. Co.,269 U.S. 483 (70 L.Ed. 368, 46 S.Ct. 176), that the indebtedness of a bank for Indian moneys, individual and tribal, deposited with it by the superintendent of an Indian reservation and secured by a bond given by the bank to the United States is an indebtedness to the United States within R.S., section 3466, and that by virtue of R.S., section 3468, the surety upon the bond given by the bank to the United States, upon payment to the United States of its claim and its assignment to him entitles him to the same priority that belonged to the United States. These sections and the interpretation thus given them are controlling upon the rights of the assignee, the plaintiff herein. They, together with R.S., section 3467, read as follows:
"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, *Page 654 
is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." R.S., Sec. 3466.
"Every executor, administrator, or assignee, or other person, who pays any debt due by the person or estate from whom or for which he acts, before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate for the debts so due to the United States, or for so much thereof as may remain due and unpaid." R.S., Sec. 3467.
"Whenever the principal in any bond given to the United States is insolvent, or whenever, such principal being deceased, his estate and effects which come to the hands of his executor, administrator, or assignee, are insufficient for the payment of his debts, and, in either of such cases, any surety on the bond, or the executor, administrator, or assignee of such surety pays to the United States the money due upon such bond, such surety, his executor, administrator, or assignee, shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States; and may bring and maintain a suit upon the bond, in law or equity, in his own name, for the recovery of all moneys paid thereon." R.S., Sec. 3468.
It is clear, therefore, that under these federal statutes as interpreted by the Supreme Court of the United States in the two decisions just referred to, that, when this defendant, as the state superintendent of banks, took possession and control of the assets and business of the defunct bank for the purpose of liquidation and became informed, as he must, that there was a debt due from the bank to the United States for the *Page 655 
amount of its deposit in said bank, it was his duty to list this claim as a preferred claim and payable as such from the funds of the insolvent bank irrespective of whether any claim for such priority was made by any officer of the federal government or otherwise, and that, if there were sufficient funds in said bank to pay said claim, it was his duty to pay first the claim of the United States before paying any unsecured or unpreferred claims, and, for a failure to perform that duty, he would "become answerable in his own person and estate for the debts so due to the United States, or for so much thereof as may remain due and unpaid", as provided in R.S., Sec. 3467.
It is also clear that, upon payment to the United States of the debt by the surety on the bond given by the bank, the surety became subrogated to the rights of the United States and was equally entitled to have its claim paid first from the assets of the bank prior to the payment of any secured or unsecured claims and irrespective of any provisions contained in any state statute. The fact that the plaintiff was a paid surety does not affect the question in the slightest for the controlling federal statute covers all sureties coming within its terms and makes no distinction between a compensated surety and one who has entered into a contract of suretyship gratuitously. This was the effect of the decision in Bramwell v. United States Fidelity andGuaranty Company, supra, and accords with the decisions of this court in Wasco County v. New England Equitable Ins. Co., 88 Or. 465
(172 P. 126, L.R.A. 1918D, 732, Ann. Cas. 1918E, 656), andFidelity Deposit Company v. State Bank of Portland, 117 Or. 1
(242 P. 823). In the first case this court said:
"* * * A court of equity grants the right of subrogation because the surety has paid the debt of the *Page 656 
principal, and the right of subrogation is not dependent upon whether the surety was or was not paid to sign the bond. It is enough that the surety was obliged to pay and did pay the debt."
In the last case cited, this court said:
"There is no distinction between the right of a paid surety to subrogation and one who has entered gratuitously into a contract of suretyship. Both are clothed with all the rights, remedies, priorities and securities of the party to whom the debt of the principal was paid, and stand in his shoes, whether the creditor be a sovereign state or a private individual."
The contention that, after the surety had once paid the bank's debt and secured an assignment from the United States of its claim against the bank, it no longer stood in the shoes of the federal government and, therefore, became subject to all the limitations contained in the Oregon statutes as to the time of taking an appeal and the filing of a claim in the circuit court, cannot be sustained for two reasons: (1) section 3468, R.S., provides otherwise for it gives to the surety "the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States", and confers upon such surety the right to "bring and maintain a suit upon the bond, in law or equity, in his own name, for the recovery of all moneys paid thereon"; the United States not being bound by any limitations contained in the state statute in respect to these matters, its assignee could not be bound under any fair and reasonable construction of that section; and (2) since the surety, upon payment of the debt due to the United States, became clothed with all the rights, remedies, priorities and securities of the party to whom the debt of the principal was paid and stands in his *Page 657 
shoes, whether the creditor be a sovereign state or a private individual, as was held in Fidelity Deposit Company v. StateBank of Portland, supra, these limitations, which were not binding upon the United States, would, if binding upon the surety and not complied with, deprive him of one of the most essential parts of the right of a subrogee.
We find no support in any of the cases cited by the defendant upon which the demurrer can be sustained. The federal statute is conclusive upon all the questions involved upon this appeal.
The demurrer, therefore, will be overruled and the cause will be remanded for such further proceedings as are not inconsistent herewith. *Page 658