## NATIONAL SURETY CO. v. MORRIS*
## UNITED STATES FIDELITY & GUARANTY CO. v. ELLIOTT

(No. 1307, 1319; Dec. 21, 1925; 241 Pac. 1063.)

SUBROGATION—RIGHTS OF SURETY—BANKS AND BANKING—IN BUSINESS ENTERPRISES STATE IS NOT A PREFERRED CREDITOR—PUBLIC DEPOSITORY LAW.

1. Where state funds are deposited in banks under depository act (Comp. St. 1920, §§ 2949-2976, enacted under authority of Const. art. 15, § 7), sureties therein succeed to any preference right which state may have.

2. Where money was deposited by state in state banks under depository act (Comp. St. 1920, §§ 2949-2976), state's requirement of surety bond therefor *held* to show waiver of whatever preference it might otherwise have had.

3. Since state, by placing money in banks at interest under depository act (Comp. St. 1920, §§ 2949-2976), engaged in a business enterprise, it put itself on a level with private individuals as to preference, and hence state's money so deposited is not a trust fund, but creates the relation of debtor and creditor.

4. When a state puts itself on a level with private individuals by engaging in a business enterprise, it, to that extent, loses its character as sovereign.

*See Headnotes (1) 7 C. J. p. 749 n. 59 New; 18 C. J. p. 581 n. 45; p. 582 n. 41; 32 C. J. p. 890 n. 83; (2) 7 C. J. p. 749 n. 59 New

(3, 4) 7 C. J. p. 749 n. 59 New; 36 Cyc. p. 845 n. 62; p. 871 n. 80; 37 Cyc. p. 426 n. 83.

Appeals taken in two cases, but the decision covers both. They are, case numbered 1307 appealed from District Court, Sheridan County; James H. Burgess, Judge, and case numbered 1319 appealed from District Court, Platte County; William A. Riner, Judge.

The action in 1307 was by National Surety Company against T. A. Morris, as Receiver of Citizens State Bank of Sheridan; the action in 1319 was by the United States Fidelity and Guaranty Company against J. A. Elliott, as Receiver of the Platte County State Bank. There were judgments for defendants and both plaintiffs appeal.

*R. G. Diefenderfer,* and *Kinkead, Ellery & Henderson* for appellant in case numbered 1307.

A Receiver of a bank under 5152 C. S. is the same as the Receiver in Chancery. The state has a prerogatory preference right over a creditor which is not destroyed by the depository law; Chap. 183 C. S. State vs. Foster, 5 Wyo. 199; decided however, upon the principle that title vests in assignee under general assignment; supported by Marshall vs. N. Y. 65 L. ed. 315; Aetna Co. v. Miller, (Mont.) 170 Pac. 760; F. & D. Co. vs. McClintock, (Mont.) 218 Pac. 652; City of Denver vs. Stenger, 295 Fed. 809; Re Carnegie Trust, 99 N. E. 1096; U. S. F. & G. Co. vs. Bramwell, (Ore.) 217 Pac. 332; Am. Bonding Co. vs. Reynolds, 293 Fed. 356; Booth vs. State, 63 S. E. 502; F. & G. Co. vs. Rainey (Tenn.) 113 S. W. 397; Woodyard vs. Sayre (W. Va.) 110 S. E. 689; State vs. Bank (N. M.) 167 Pac. 3; State vs. Bank of Maryland, 26 Am. Dec. 561; but three states have denied the doctrine; New Jersey, South Carolina and Mississippi. Depository Laws are sometimes held to be a waiver; State vs. Loudermilk (Ariz.) 205 Pac. 915; Surety vs. Pixton, (Utah) 208 Pac. 878; it is denied in Washington on the ground that title passed to liquidator of insolvent bank before it was asserted; Aetna C. & S. Co. vs. More (Wash.)

181 Pac. 40; in Iowa it is sustained under a statute; Buena
Vista County vs. Bank, 196 N. W. 729; with the above ex-
ceptions or qualifications, the doctrine is supported by the
clear weight of authority.  A surety paying the debt of its
principal to a state, is subrogated to the states right; U. S.
F. & G. Co. vs. Trust Co.; 121 S. E. 430.; Casualty Co. vs.
McConnell (Tenn.) 257 S. W. 410; U. S. F. & G. vs. Bank
(N. Y.) 107 N. E. 1086; U. S. F. & G. Co. vs. Bramwell,
217 Pac. 333; Aetna A. & L. Co. v. Miller (Mont.) 170 Pac.
760; Am. Bonding Co. vs. Reynolds, supra; a statutory
bank receiver is an arm of the court; 5152 C. S. Kilpatrick
vs. Horton, 15 Wyo. 501; Riordan vs. Horton, Supra; his
possession is that of the court; Casualty vs. McConnell,
supra; State vs. Bank, 219 Pac. 652; Ry. Co. vs. Humphrey,
36 L. ed. 632; High on Receivers, Section 134, p. 153; Bowl-
ing vs. Ins. Co., 103 S. E. 285; Stewart, Rec. vs. Bank, 63
L. ed. 135; and cases cited; 5152 C. S. does not vest title
in such receivers.  The depository act does not repeal the
prerogative adopted from common law; 2950-2957 C. S.;
U. S. F. & G. vs. Bramwell, supra; in re Carnegie Trust
Co., supra; the general rule is that the prerogative stands
unless expressly repealed; U. S. vs. Herron, 22 L. ed. 275;
Bank vs. U. S. 22 L. ed. 80; repeals by implication are not
favored; Woodyard vs. Sayre, 110 S. E. 689; Cattle Co. vs.
Baird, 8 Wyo. 144; the order vesting the bank's assets in
the receiver is void since the statute places the property in
custodia legis; Clark vs. Co. (Mo.) 209 S. W. 307; Irriga-
tion Co. vs. Co. (Utah) 174 Pac. 852; Sharp vs. McColm
(Kans.), 101 Pac. 659; the important point seems to be
whether the enactment of the depository law repealed the
common law principle of sovereign prerogative, and the
weight of authority seems to be that it did not, since it con-
tains no express waiver.

*Louis J. O'Marr* for respondent.

It may be conceded as a general rule that many of the
decisions, unaffected by statute, support the claim of a state
to a preference over general creditors of an insolvent bank,

but the following cases hold to the contrary; Com. vs. Bank (Mich.) 175 N. W. 424; State vs. Bank (N. M.) 167 Pac. 3; Central Trust Co. vs. Ry. Co., 186 Fed. 292; Potter vs. Co. (Miss.) 58 So. 713; Brown vs. Roadway Co., 210 Fed. 844; Middlesex Co. vs. Bank, 29 N. J. Eq. 268; State vs. Bank, 26 Am. Dec. 561; Kies vs. Wilkinson (Wash.) 172 Pac. 351; holding that the right does not exist unless created by statute; a surety discharging a bank's obligation to a state, is subrogated to the rights of the state; a reasonable interpretation of 5152 C. S. is, that a receiver takes title to the assets; the courts have power to dissolve corporations; 5438 C. S. and vest title to assets in a receiver; 5442 C. S. this dissolution is a statutory power; 14a C. J. 1087-1088, not inherent in equity courts; title being vested in a receiver, a subsequent claim of preference by the state is not effective; State vs. Foster, 5 Wyo. 199; and cases cited; though an assignment was involved there, a receivership has the same effect; State vs. Bank, (N. M.) 168 Pac. 526; Com. vs. Bank (Mich.) 125 N. W. 424; Surety Co. vs. Pixton (Utah) 208 Pac. 878; State vs. Williams (Md.) 61 Atl. 297; Aetna vs. Moore, (Wash.) 181 Pac. 40; the state waived any right of preference by taking security under Chapter 183 C. S.; this is the rule in Arizona and Utah; see cases, supra; whether the title is vested in a receiver by statute, or by court decree is immaterial; the trial court held that the enactment of the depository law was an implied repeal of the common law doctrine of preference of the sovereign, and that title to the bank's assets having passed to the receiver, appellant lost any preference it might otherwise have had; this doctrine is apparently sound and should be affirmed.

*Gillette & Clark* and *Roy J. Williams* (*O. O. Natwick* of counsel) for appellant in case 1319.

The common law of England is the rule of decision in Wyoming, and the common law accords to the state a preference as a creditor against insolvents; this preference

is not waived by the depository law; title to assets did not pass to the receiver so as to prevent the right of priority attaching; the right of priority was not waived by failure to assert it in filing the claim; the bank was not dissolved; 4547 C. S. In re Thornton's Est. (Miller vs. State) 21 Wyo. 430; State vs. Foster, 5 Wyo. 199; Campbell vs. C. C. & I. C., 9 Colo. 60; Jobbers Ass'n vs. People, 21 Colo. App. 326; as to the crown prerogative; 3 Holdworth's History of England 459; Halsbury's Laws of England, Vol. 6, 493; 8 Bacon Abr. 91; 1 Coke on Littleton, 131b; 1 Cooley's Blackstone (3rd ed.) 239; in re Henley & Co., 9 Ch. Div. 469; preference of the sovereign exists in Wyoming; State vs. Foster, supra; People vs. Tool, 35 Colo. 225; Denver vs. Stenger, 295 Fed. 809; it is recognized in a large number of states; Aetna A. & L. Co. vs. Miller (Mont), 170 Pac. 760; where the right of subrogation passes to a surety. The law of Montana relating to insolvent banks is similar to that of Wyoming; see State vs. Bank, 218 Pac. 652; the existence of the doctrine of state preference is denied in only three states, New Jersey, South Carolina and Mississippi; it exists in West Virginia; Woodward vs. Sayre, 90 W. Va. 295; U. S. F. & G. vs. Trust Co., 121 S. E. 430; in New York in re Carnegie Trust Co., 99 N. E. 1096; same vs. Carnegie Trust Co., 107 N. E. 1087; same vs. Bank, 107 N. E. 1086; Marshall vs. New York, 254 U. S. 380; 65 L. ed. 315; and in Oregon U. S. F. & G. vs. Bramwell, 217 Pac. 332; in Pennsylvania; Booth & Flynn vs. Miller, 237 Pa. 297; in Tennessee; U. S. F. & G. vs. Rainey, 120 Tenn. 357; and cases cited; Maryland Co. vs. McConnell, 148 Tenn. 656; in North Carolina; Hoke vs. Henderson, 14 N. C. 12; in Virginia; Watts vs. Kinney, 3 Leigh (Va.) 272; in Minnesota; State vs. Bell, 64 Minn. 400, 67 N. W. 212; Surety Co. vs. Pearson, 178 N. W. 817; in Maryland; State vs. Williams, 101 Md. 529, 61 Atl. 297; in Georgia; Robinson vs. Bank, 18 Ga. 96, and cases cited; Booth vs. State, 63 S. E. 502; in Iowa; in re Bank (Iowa), 200 N. W. 199;

cases contra are: Freeholders vs. Bank, 29 N. J. Eq. 268; State vs. Harris, 2 S. C. 600; Potter vs. F. & D. Co., 101 Miss. 823, 58 So. 713; Zimmerman vs. Bank (Mich), 127 N. W. 351; in re Bank (Ariz.), 205 Pac. 915; it was held that the right existed but was waived by a depository law; also Utah in the case of Surety Co. vs. Pixton, 208 Pac. 878; the enactment of a depository law held not to waive the preference in; Marshall vs. New York, 254 U. S. 380; Campbell vs. C. C. & I., 9 Colo. 60; Allen vs. McFerson (Colo.), 235 Pac. 347; the right cannot be destroyed by a receivership; Co. vs. Englewood, 62 Colo. 229; Freeport Co. vs. Freeport, 180 U. S. 587, 45 L. ed. 679; it was not repealed in Wyoming by implication; Cattle Co. vs. Baird, 8 Wyo. 144; repeal must be express; State vs. Madison (Mont.), 218 Pac. 652; Co. vs. Co., 224 U. S. 152; Henley vs. Company, supra; Aetna vs. Miller (Mont.), 170 Pac. 760; Marshall vs. N. Y., supra; Woodward vs. Sayre, supra; the sovereign is not bound by the general language of insolvency laws unless mentioned; G. T. & T. Co. vs. Co., 224 U. S. 152; and cases cited; nor by mere inference; U. S. vs. Herron, supra; in re Carnegie Trust Co., 136 N. Y. Supp. 466; receivership did not pass title to the receiver so as to prevent bank priority; in re Bank vs. Norton, 15 Wyo. 501; Riordan vs. Horton, 16 Wyo. 362; Aetna A. & L. Co. vs. Miller, 54 Mont. 377; and cases cited; Co. vs. Reynolds (Mont), 203 Fed. 356; City of Denver vs. Stenger (Colo.), 295 Fed. 809; State vs. Bank (Mont), 218 Pac. 652; Marshall vs. New York, supra; Casualty Co. vs. McConnell (Tenn.), 257 S. W. 410; 5183 C. S. indicates legal status of property is custodia legis; 34 Cyc. 184; Jackson vs. King (Kans.), 58 Pac. 1013; High, Receivers, Secs. 1, 5; Stokes vs. Huffman House, 60 N. E. 667; and cases cited; priority was not waived by failing to assert it in filing the claim; Stearns, Suretyship (3rd ed.) 438; 25 R. C. L. 1327; the priority passed by subrogation; Aetna vs. Miller, supra; a surety is put in the

shoes of the creditor; U. S. F. & G. Co. vs. Co., 107 N. E. 1087; U. S. F. & G. Co. vs. Co., 1121 S. E. 430; its right rests upon subrogation; Orem vs. Wrightson, 51 Md. 34, and applies to compensated sureties; the state has a priority right for payment of its debts from assets of insolvents, since no statute exists to the contrary.

*J. E. Jacobson* and *W. B. Jones* for respondent.

The common law of England is the rule of decision in Wyoming, when not inconsistent with its laws; 4547 C. S. Merrill vs. State, et al., 21 Wyo. 430; Hovey vs. Sheffner, 16 Wyo. 254; Inv. Guar. Corp. vs. Thomson, 31 Wyo. 264; it is a principle of the common law that the sovereign has preference as a creditor. The doctrine has not been contravened by statute in Wyoming. It was discussed, but not decided in State vs. Foster, 5 Wyo. 211. It is true that decisions are influenced in some cases by the existence of depository and banking laws; County vs. Ulrich (Ia.), 201 N. W. 137; Co. vs. Trust Co. (N. D.), 200 N. W. 892; 15 C. J. 348; the taking of security and interest for public deposits is considered a waiver of the prerogative by several courts; Co. vs. Pixton (Utah), 208 Pac. 880; State vs. Loudermilk (Ariz.), 205 Pac. 916; Aetna C. & S. Co. vs. Moore (Wash), 181 Pac. 43; Smith vs. Arnold (Ky.), 176 S. W. 984; it is also held that a sovereign power must be expressed by statute; Zimmerman vs. Bank (Mich), 127 N. W. 352; the banking act requires a distribution of assets of insolvents pro rata; 5152 C. S., the Constitution requires a uniform operation of laws; the right dies when the debtor's title is divested; State vs. Foster, supra; 29 N. J. 273; State vs. Bank, 168 N. M. 526; in re Bank (Ariz.), 205 Pac. 916; State vs. Williams, 1 L. R. A. (N. S.) 257; a bank receiver takes title to the assets; 7 C. J. 502; Tardy's Smith on Receivers, Vol. 2, Sec. 449, page 1294; Fletcher on Corps., Vol. 8, Sec. 5282-5309.

*Gillette & Clark* and *Leroy J. Williams* (*O. O. Natwick,* of counsel) in reply.

The rule of priority is supported by the clear weight of authority in this country. It is not inconsistent with the laws of Wyoming; 36 Cyc. 1071; there can be no repeal by inference; Booth vs. Flynn, 58 Atl. 457; statutes in derogation of the common law are to be strictly construed; Campbell vs. C. C. & I. Co., 9 Colo. 60; it was not contravened by 5152; it was not repealed by the depository act; 2953 C. S., a repeal by implication must be a necessary implication; State vs. Wells, 109 S. W. 758; Wood vs. U. S., 10 L. ed. 995; R. R. Co. vs. U. S., 52 L. ed 567; the depository law merely requires collateral security and does not remove the primary obligation of the bank to pay the state; 2953-2954 C. S., 11 C. J. 961; Moffatt vs. Coring, 14 Colo. 104, 24 Pac. 7; Colebrook, Sec. 113, p. 146; title did not pass to the receiver; the property was in custodia legis.

BLUME, Justice.

This decision covers two cases, that of the National Surety Company v. T. A. Morris, Receiver of the Citizens State Bank of Sheridan, and that of the United States Fidelity and Guaranty Company v. J. A. Elliott, Receiver of the Platte County State Bank. In the first mentioned case it appears that the Citizens State Bank, a banking corporation, organized under the laws of this state, doing business at Sheridan, Wyoming, suspended business on May 15, 1924. The State Examiner took possession of the bank on that date in accordance with provisions of law authorizing him to do so in case of suspension of business by a bank. On July 28, 1924, T. A. Morris was appointed receiver. In the judgment rendered on that date, the court dissolved the corporation, enjoined it from proceeding further with its business, and vested the title to all of its real and personal property in said receiver. The State Treasurer of this state had, prior to said date, de-

posited state funds with said bank, in accordance with the state depository law. The bank had been duly designated as a state depository, and had given a bond to the state of Wyoming, with the National Surety Company as surety, in the sum of $8,000. The amount of state money on deposit in the bank at the time of its suspension of business was the sum of $7,000, on which there was $81.08 interest due. On August 14, 1924, said surety company paid the amount so due, namely $7,081.08, to the state, and thereafter filed its claim for this amount with said receiver, and asked, under its right of subrogation to the claims of the state, to be made a preferred creditor. The receiver denied such preference right. Suit was brought against him by said surety company, but the court also denied such right. And from the judgment to that effect, said surety company has appealed to this court.

In the second of the above cases, it appears that the Platte County State Bank, a banking corporation, organized under the laws of this state, suspended business on February 17, 1923, at which time the State Examiner took possession of it. On April 26, 1923, J. A. Elliott was, by order of court, duly appointed receiver. Said order provided, among other things, that the bank be closed and enjoined from further proceeding with its business; and that said receiver take charge of all its property and hold the same subject to the orders of the court. No specific order dissolving the bank as a corporation, or vesting the title to its property in the receiver, was made. This bank, too, had been duly designated as a state depositary, in accordance with the laws of this state, had received deposits of state funds and had given two bonds with the United States Fidelity and Guaranty Company, as surety, of $5600 each, in order to protect said deposits. The amount of such deposit, on the date the bank suspended business, was $10,000, on which $39.45 interest was due. This amount was, upon demand, paid by said

surety company to the state in June, 1923. In May, 1923, the State Treasurer had filed a claim therefor with said receiver, and this claim was, by the State Treasurer, assigned to the said surety company. The latter, on February 26, 1924, made a demand on the receiver, to be made a preferred creditor for the foregoing amount. This demand was denied, whereupon suit was duly instituted by said surety company against said receiver, but the court, too, denied such preference right, and from the judgment to that effect said surety company has appealed to this court.

1. The two cases were argued and submitted at the same time, and both may be decided in one opinion. The sole questions in each case are (1) as to whether the state was entitled to a preference, and (2) whether the appellant by reason of subrogation to the rights of the state succeeds thereto. It is conceded, though doubted in the recent Colorado case hereinafter mentioned, that the surety companies would succeed to any preference right which the state might have, and we shall not discuss that point. It was undoubtedly the general rule of the common law that the crown of England was entitled to have its debts paid in preference to those due to private individuals, and many of the courts of the United States have held that this royal prerogative is vested in the states as sovereignties. Among the cases so holding are: United States Fidelity and Guaranty Co. v. Bramwell, 108 Ore. 261, 217 Pac. 332, 32 A. L. R. 829; Aetna Accident and Liability Co. v. Miller, 54 Mont. 377, 170 Pac. 760, L. R. A. 1918c 954; American Surety Co. v. Pearson, 146 Minn. 342, 178 N. W. 817; In re Carnegie Trust Co., 206 N. Y. 390, 99 N. E. 1096, 46 L. R. A. (N. S.) 260; Central Bank and Trust Co. v. State, 139 Ga. 54, 76 S. E. 587; Woodyard v. Sayre, 90 W. Va. 295, 110 S. E. 689, 24 A. L. R. 1497. In very few of these cases a depository act, such as we have in this state, was considered, but it may be con-

ceded that these courts strongly incline to the view that a state is, generally speaking, entitled to preference. Other courts, on the other hand, deny that the foregoing rule of the common law is adapted to the conditions in the United States, and hold that the state has no preference unless that is granted by statute. Middlesex County etc. v. State Bank, 29 N. J. Eq. 268; Potter v. Fidelity & G. Co., 101 Miss. 823, 58 So. 713; State v. Harris, 2 Bailey (S. C.) 598; Shields v. Thomas, 71 Miss. 260, 14 So. 84, 42 A. S. R. 458. Still other cases, hereinafter referred to, hold that the state has lost its preference under circumstances similar to those that appear in the case at bar. Among the courts so holding are those of Colorado, Utah, New Mexico, Arizona, Washington, Michigan, Maryland, New Jersey—rather respectable authority, although some of the courts base their holding upon one reason, and others upon another. We may assume, for the purposes of this case, that the state has, generally speaking, a preference right, and shall confine our discussion to the point as to whether it has such right under the circumstances that appear herein. Before proceeding further, we might say that the differences among the courts on the question as a whole is undoubtedly due in part to the fact that some of them lay greater stress than others upon the importance of protecting public money, without considering to the same extent as do others the hardship that will frequently fall upon hundreds of individuals in case preference is given to the state. In this connection, Chief Justice Shaw said in the case of Com. v. Bank, 11 Met. (Mass.) 129, 147, which involved a claim of preference, under a statute, on the part of the United States:

"Claims to a preference and payment in full are not favored by any considerations of equity. The general rule is, that when several creditors are entitled to payment from a fund insufficient to satisfy the whole, they shall share in proportion. This rule of equity may be controlled

by a provision of positive law. In such case all the creditors will not be equally entitled to be paid in full, and equity must yield to the law. But in order to establish such a preference, it must be made plainly to appear that the case is within the rule of law that secures such preference.''

This court held in the case of State v. Foster, 5 Wyo. 199, 38 P. 926, 29 L. R. A. 226, 63 Am. St. Rep. 47, that where a bank made an assignment for the benefit of creditors, the title to the property vested in the assignee and that thereupon all rights of preference of the state ceased. The principle of that case is recognized in State v. Bank of Maryland, 6 G. & J. (Md.) 230, 26 Am. Dec. 561; State v. Williams, 101 Md. 529, 61 Atl. 297, 109 A. S. R. 579, 1 L. R. A. N. S. 254, 4 Ann. Cas. 970; Middlesex County v. State Bank, 29 N. J. Eq. 268; Aetna Casualty and Surety Co. v. Moore, 107 Wash. 99, 181 Pac. 40; Commissioners v. Chelsea Savings Bank, 161 Mich. 691, 125 N. W. 424, 127 N. W. 351; State v. First State Bank, 22 N. M. 661, 167 Pac. 3, L. R. A. 1918A 394. Counsel for appellants indeed concede the correctness of the rule. Yet no valuable consideration is paid, either by the creditors interested or by the assignee. The property, that was the debtor's, is neither increased nor decreased thereby. The assertion of such royal or sovereign prerogative would not injure the creditors, who only would be affected thereby, any more after the making of the assignment than before, and the rule above mentioned seems strange, if the prerogative mentioned was and is in fact of such high standing as counsel would have us believe it to be. The conclusion to be reached would rather seem to be to the effect that the right was destroyed upon grounds comparatively slight. Counsel for appellant seriously contend that the cases at bar do not come within the rule of State v. Foster, and particularly in the Elliott case, a distinction is sought to be drawn. In the Morris case the court

dissolved the bank, as it was expressly authorized to do by the provisions of section 5152, W. C. S. 1920. Section 5442, a section contained in the chapter providing for dissolution of corporations, provides that ''the title to all real and personal estate belonging to any such corporation, shall immediately upon the dissolution thereof, unless by a decree of a court of competent jurisdiction declaring such dissolution, it is otherwise ordered, pass to and rest in such trustee, directors, or other managers.'' It is contended by counsel for respondent in the Morris case that the term ''receiver'' comes within the meaning of the clause ''or other managers,'' and that Morris, the receiver, accordingly was vested with the title of the Citizens State Bank upon the dissolution thereof. We need not determine that point. In both of the cases at bar the bank was enjoined from doing any further business; in both cases the receiver had full charge and control of the property of the insolvent corporation, under direction of the court, with full power to collect the debts and sell and dispose of all real and personal property in order to satisfy the claims of creditors. And we repeat, that creditors only, can be injuriously affected by the assertion of the sovereign prerogative above mentioned. They received the same kind of benefit under the receivership in the Elliott case as under the receivership in the Morris case, and in either case they were protected to the same extent and had the same rights, at least as a whole, as the creditors in the case of State v. Foster. What possible difference can it make if the technical title was not vested in the receivers? Shadowy lines should not, unless perchance absolutely imperative on the grounds of necessity, make one principle of law and justice applicable in one case and another principle in another case. And if the rule announced by this court in the Foster case is correct, it was rightly applied by the courts of Michigan and Washington, in Commissioners v. Chelsea Savings Bank, supra,

and Aetna Casualty & Surety Co. v. Moore, supra, to cases where as, perhaps, here, the technical title was not vested in the receiver. The court said in the first of these cases:

"Without treating the action of the bank commissioners in closing the Chelsea bank as the precise legal equivalent of a fair and bona fide assignment by the bank of its assets for a valuable consideration, it is nevertheless true that the proceedings taken passed all the property of the bank beyond its power or control. This being the result of enforcement of the state law, should have an effect equal to an assignment for benefit of creditors. Such an assignment could not be avoided by the crown."

Similar in effect is Middlesex County v. State Bank, supra.

It would seem, accordingly, that unless we are prepared to overrule State v. Foster, supra, which we are not asked to do, we should affirm the judgments in the cases at bar. We may, however, we think, base such affirmance mainly on other grounds.

2. When we come to examine the depository act of this state (Secs. 2949-2976, W. C. S. 1920), we find careful provisions made for the protection of the state's money. This act was passed in conformity with section 7, article 15, of our constitution, which reads as follows:

"All money belonging to the state, or to any county, city, town, village, or other sub-division therein, except as herein otherwise provided, shall whenever practicable, be deposited in a national bank or banks, or in a bank or banks incorporated under the laws of this state; provided that the bank or banks in which such money is deposited shall furnish security to be approved as provided by law; and shall also pay a reasonable rate of interest thereon. Such interest shall accrue to the fund from which it is derived."

Section 2950, W. C. S. 1920, creates a board of deposits consisting of the Governor, State Treasurer and Secretary of State. This board designates such banks within the state which may, under the provisions of the depository act, deem eligible to be made state depositaries for the funds of the state. Any bank in the state may, if it is able to comply with the requirements of the act, become such depositary. And it is well known, as an historical fact, that one of the things that actuated the legislature in passing the act in question was to enable the State Treasurer to deposit the funds in his hands in banks in various portions of the state, instead of keeping them all, or the major portion thereof, in the capital of the state, and the legislature by that fact itself, attempted to provide greater protection for such funds. Every bank applying to become a depositary for the state's funds, must, according to section 2951, W. C. S. 1920, file its application in writing, accompanied by a sworn statement of its financial condition, so as to enable the state board of public deposits to determine whether or not it is a proper institution to safeguard the funds that may be entrusted to it. The State Treasurer must deposit the state's money in the banks that may be designated as depositaries therefor. But here, too, an additional safeguard is provided, for he must not have on deposit in any bank, at any one time, funds in excess of one-half of its paid-in and unimpaired capital stock and surplus. Section 2952. In addition thereto the depositary must either give a bond with some responsible surety company as surety, or put up collateral security consisting of United States Government bonds, or state, county, city or school bonds or warrants issued pursuant to the laws of this state, worth not less than their par value and in an amount equal, at least, to the maximum amount of such state-money deposited. For temporary deposits, local collateral-security may be given, but it must have an appraised value of at least 25 per cent

more than such temporary deposits. All such collateral securities must be approved by the board of deposits, and the legal title thereof must be vested in the state, so as to more readily enable it to recover its money. There are other provisions of the law designed for fuller protection of the state's money, but it is unnecessary to mention them in detail. Similar provisions are made for public funds of counties, cities, towns and school districts. Interest on all public funds must be paid by the depositaries in an amount to be fixed by the proper boards of deposit, not, however, less than 2 per cent nor more than 4 per cent per annum. The state has accordingly engaged in a business enterprise of securing interest on its money, not required for immediate expenditures, and has made minute provisions that such enterprise should be carefully guarded, and the investments made fully protected. The purpose to engage in such business, was, as noticed, evinced by the people when they adopted the constitutional provision above quoted.

The rule of law giving the state a preference is, it must be conceded, based only upon grounds of expediency and public necessity. Equity was not considered in the formulation of that rule, at least when originally established. And it must further be conceded that the necessity mentioned certainly does not exist to the same extent as formerly, with all the minute provisions for the protection of public money made, as they are, under our depository act. The case of United States Fidelity and Guaranty Company v. McFerson, decided by the Supreme Court of Colorado, en banc, on November 30, 1925, (not yet published) states on this point as follows:

"The sovereign's preference is an exception to the general law. The doctrine is a harsh one and from time immemorial has rested solely upon public necessity. Moreover, if Finch is correct, as quoted by Blackstone, that it is 'a maxim that the prerogative is that law in case of the

King which is law in no case of the subject,' the prerogative could never be the subject of subrogation. Here the security was ample, the state has been paid by one employed for the very purpose of assuming that risk and performing that service. There is no necessity and hence no preference. If the surety were also insolvent the necessity would appear. If the rule of the common law—that the debts of the state are preferred to the debts of the citizens because it is necessary to the public welfare to secure the public revenue—is applicable to state bank deposits when the bank becomes insolvent, and if that preference be subject to the doctrine of subrogation in favor of one who pays the state, then we hold that rule inapplicable when the state debt is otherwise secured, because there is no necessity for the preference.''

The case intimates that, perhaps, the state might have a·preference, where its surety might not. Whether that would be sound in principle, we are not prepared to say, but the court doubtless decided the foregoing case as it did, mainly in view of the fact that the surety in that case, as in the cases at bar, was paid for assuming the risk to the state. In speaking of that point the Supreme Court of Kentucky, in the case of Smith v. Arnold, 165 Ky. 214, 176 S. W. 983, where deposits in an insolvent bank by a master commissioner were involved, said as follows:

''It was to protect the funds so deposited that the bond was required of the bank; and we will not countenance an effort to relieve this bond by an attempt to obtain a priority in the disbursements of the bank's assets, to the prejudice of the other depositors.''

In that case, however, the court held that the principal's claim could not be preferred; in other words, that the bond was provided in lieu of the preference that might otherwise exist. And we may well say in the case at bar

that the requirement of the bond, is one of the things
that shows that the state meant to waive whatever prefer-
ence it might otherwise have had.  But that provision is
not the only one that shows such waiver.  The distribution
of the funds over the state, the limitation of the amount
that any bank can have, the provisions for careful inquiry
into the ability of the bank to protect the funds that
might be deposited, all go to show a special method pro-
vided to safeguard the state's money—methods that did
not exist when the common law rule of preference was
established.  We do not regard the argument that these
provisions made simply additional safeguards as of any
great force.  No special necessity therefor existed, if the
prerogative mentioned was in force, particularly in view
of the fact that the state has for many years had a state
examiner who, under the law, is required, periodically,
to carefully examine the condition of state banks, and the
minute provisions above mentioned would seem clearly
to have been intended as a substitute for any sovereign
prerogative that the state might have had.  It seems
strange that when the legislature made such detailed,
comprehensive provisions, which seem to constitute a com-
plete system for protecting the state's money, it failed to
mention such important right of preference, if it wanted to
retain it in force.

There is another thing that would seem to require the
dissipation of any doubt on the subject.  That is the pro-
vision of our law for interest on deposits.  By such pro-
vision the state engaged in a buiness enterprise, and put
itself on a level with private individuals in that respect.
It does not expect a bank to keep the state's money safely,
except only as the money of individuals is so kept through
and by means of the general assets of the bank.  The state
expects the bank to lend its money the same as it lends the
money deposited by individuals.  It would be absurd to
expect it to keep the money on hand, when interest must

be paid thereon. Hence the state's money is no trust fund, but the relation of debtor and creditor is created. It was said long ago that when a state puts itself on a level with private individuals, by engaging in a business enterprise, it, to that extent, loses its character as sovereign. Governor v. Woodworth, 63 Ill. 254; Central Bank of Georgia v. Little, 11 Ga. 346; Bank v. Gibbs, 3 McCord (S. C.) 377. In the Illinois case the court said:

"It has been held that when the Government becomes a partner with individuals in the prosecution of some business or enterprise, it divests itself of its sovereign character, so far as relates to that business, and takes the character of a private citizen. It does not impart to its associates its privileges and prerogatives, but descends to a level with those with whom it associates itself, and the character which belongs to its associates, and to the business which is to be transacted."

In these cases, it is true, the state was in partnership with private individuals, or itself conducted a private enterprise, which is not true here. Nevertheless these cases clearly show that a state is not always entitled to its sovereign prerogatives, unless, perhaps, retained by specific legislation; but that it loses them when it places itself in the same class and on the same footing with private individuals in connection with its property rights. The state has done that in connection with its deposits under our depository law, and thereby should be held to have clearly indicated that it has waived its prerogative rights. It, accordingly, not having any preference rights, its sureties do not have any. These reasons and conclusions are fully sustained and ably argued in In re Central Bank of Willcox, 23 Ariz. 574, 205 Pac. 915, and National Surety Company v. Pixton, 60 Utah 289, 208 Pac. 878, 24 A. L. R. 1487.

It follows that the judgments of the courts below should be affirmed. It is so ordered.

*Affirmed.*

POTTER, C. J., and KIMBALL, J., concur.