## No. 12,822.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SAN MIGUEL ET AL. *v.* McFERSON, BANK COMMISSIONER.

(9 P. [2d] 614)

Decided March 7, 1932.   Rehearing denied April 4, 1932.

Messrs. STIVERS & STRANG, for plaintiffs in error.

Messrs. MOYNIHAN, HUGHES & KNOUS, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE ADAMS delivered the opinion of the court.

THE board of county commissioners of San Miguel county and the treasurer of that county brought an action against McFerson, as state bank commissioner, to establish a preferential claim to certain funds in the hands of the commissioner. The trial court sustained a demurrer to the complaint; the board and county treasurer elected to stand on their complaint, and judgment for defendant was rendered accordingly. The complainants bring the case here for review on writ of error. We shall refer to plaintiffs in error in the singular as the board, to defendant in error as the bank commissioner or the commissioner, and to the Bank of Telluride as the bank.

The substance of the complaint, in so far as it pertains to this decision is as follows: The bank became insolvent and the bank commissioner took possession and control of all of its assets for the purpose of, and is now engaged in, liquidating its affairs. The county treasurer and his predecessor in office had a total sum of $74,385.75 on deposit with the bank when the commissioner took charge. The assets of the bank are insufficient to pay all claims against it in full. The only security held by the board is a bond in the sum of $40,000 signed by a former county treasurer and his bondsmen, but they are all insolvent, and the board will not be able to realize in excess.

of $1,000 on the bond. The board filed a claim with the bank commissioner, claiming a preference for the amount due, but the commissioner disallowed the said claim.

The district court sustained the commissioner's demurrer to the above complaint, but the court expressly provided that its judgment should be without prejudice to the right of the board to apply for, and to have allowed, in accordance with law, any claim that the board may have as a common claim, but not as a preference. The sole question involved is whether the general deposits of the funds of the county in the insolvent bank are entitled to priority over the claims of other creditors. Counsel for the board argue that its claim should be so preferred under the provisions of the common law; that such right was a sovereign prerogative for the protection of public revenues; that the county is an arm of the sovereign state, and as such is entitled to a preference. In opposition, counsel for the bank commissioner contend that the common law does not control, first, because it never applied to a case of this kind, and second, for the reason that if it ever had any force with respect to such a matter, it has been impliedly abrogated by statute.

1. We have heretofore indicated that such an alleged preferential right in the distribution of the assets of an insolvent bank did not exist, even under the common law, there being no analogy, since England's extensive banking system had its inception long after the year 1607. *United States Fidelity and Guaranty Co. v. McFerson,* 78 Colo. 338, 241 Pac. 728. Our further investigations confirm our understanding that the case is not supported by the common law. The question has been the subject of much controversy. ''But, as applied to insolvent banks in which deposits of public money have been properly made, the better rule seems to be that in the absence of statute or a showing of facts sufficient to create a trust, a claim for public money has no preference over the claims of the general creditors of a bank, but stands on

the same footing with them." 3 R. C. L., page 644, §273. "And an author, quite as eminent as a jurist as any name that ever adorned the American bench, has stated, that the right of preference of a state, in this country, does not rest upon the common law, but exists only where given by statute. 1 Kent's Com. 248, note (c)." *Freeholders of Middlesex County v. State Bank,* 29 N. J. Eq. 268, 272; *Commonwealth v. Commissioner of Banks,* 240 Mass. 244. In the case of *United States Fidelity and Guaranty Co. v. McFerson, supra,* we recognize the fact that the authorities are not all in harmony. See also 7 C. J., p. 749, §543; Michie on Banks and Banking, vol. 3, page 231, section 170, and same, page 278, section 196; but we have followed that which we believe to be the "better rule," as above quoted.

Counsel for the board rely upon the case of *City and County of Denver v. Stenger,* 295 Fed. 809, wherein it is held that a municipality is entitled to a priority on the theory that the debt is due the sovereign. But as later said in *Aetna Casualty & Surety Co. v. Bramwell,* 12 Fed. (2d) 307, 310: "This case is now shorn of application, by reason of the fact that Colorado has, since the decision of that case, denied the common-law prerogative right to the state. *United States Fidelity and Guaranty Co. v. McFerson* (Colo. Sup.) 241, p. 728."

█ 2. Aside from the common law, we have no statute that warrants such preference. On the contrary, section 1, chapter 83, pages 280-283, S. L. 1927, makes provision for the protection of public monies in the hands of county treasurers. It provides, in substance, as follows: The treasurer shall deposit all funds that come into his possession by virtue of his office, in one or more responsible banks located in this state. Such bank or banks shall pay interest on the average daily balances at such rates as may be agreed upon, not less than two per cent per annum, less clearing house charges. Before making such deposits, the county treasurer may take from such bank or banks a good and sufficient bond, provided, how-

ever, that the bank may tender to the treasurer, United States bonds or other securities of a specified class, which the treasurer shall accept in lieu of such bond.

The above legislation shows that the state does not intend to rely upon a common law right, since it has adopted other means of securing county revenues. *National Surety Co. v. Pixton*, 60 Utah, 289, 208 Pac. 878; *In re Central Bank of Wilcox*, 23 Ariz. 574, 205 Pac. 915; *Maryland Casualty Co. v. Rainwater*, 173 Ark. 103, 291 S. W. 1003, 51 A. L. R. 1332; *In re Holland Banking Co.*, 313 Mo. 307, 281 S. W. 702; *National Surety Co. v. Morris*, 34 Wyo. 134, 241 Pac. 1063.

3. We held in *United States Fidelity and Guaranty Co. v. McFerson, supra,* that when a state debt was otherwise adequately secured, there was no necessity for a preference. We did not need to go farther to determine that cause, but here we have an additional question. The county deposits amount to the sum of $74,385.75, but the bond is for only $40,000; not more than $1,000 can be realized on that, so that there is a deficiency of $73,385.75 in the statutory security exacted from the insolvent bank. Does the fact that the security is inadequate justify the claim of the board for a preference? We must hold that it does not. The cogent reasoning of Mr. Justice Field in *Cook County National Bank v. United States,* 107 U. S. 445, 449, 2 Sup. Ct. 561, relating to funds of the federal government, furnishes the answer. It is there said: ''The government can thus always have security, limited in amount only by the judgment of the Secretary of the Treasury, for public moneys deposited with any national bank. With these provisions for security against possible loss for moneys deposited, it would seem only equitable that the government should call for such security, and, if it prove insufficient, take the position of other creditors in the distribution of the assets of the bank in case of its failure. The framers of the banking law evidently so regarded the matter.''

It is no fault of the other creditors of the insolvent

bank that the county treasurer failed to take a good and sufficient bond, as required by law. They are not guarantors of the safety of county deposits. *In re Holland Banking Co., supra,* is another case where the security was inadequate, but a preference was not allowed. And another feature that has been held to put the state on a level with private individuals is the provision that its deposits shall draw interest. In this respect, its status is not that of a sovereign, but of a business competitor. *National Surety Co. v. Morris, supra; In re Central Bank of Wilcox, supra.*

■ 4. In the last analysis, the urgent needs of the county is the only basis of its claim for a preference. Governmental necessity was the prime consideration for the recognition of the Crown's prerogative, but we have adopted the common law with limitations, and only "so far as the same is applicable and of a general nature." Section 6516, C. L. 1921; *United States Fidelity and Guaranty Co. v. McFerson, supra.* Our adherence to that body of laws is limited according to the expression of the statute that preserved it. *Herr v. Johnson,* 11 Colo. 393, 396, 18 Pac. 342. If the common law ever operated upon a similar case it is inapplicable here. Necessity is not the sole criterion; laudable ends do not justify unlawful means; the money lost by the county was not illegally acquired under the revenue laws, and cannot be illegally recovered. We have not reached the stage where we can say that a complaint founded merely upon the ground that the plaintiff needs the money for a good purpose states a cause of action, even though pleaded by a county. If it did, a county might win any law suit, or interpose a plea of poverty in discharge and satisfaction of any of its lawful obligations. A valid distinction is drawn between the rights of a sovereign and those of a proprietor in *State v. Carlyon* (Wash.), 7 P. (2d) 572, where it is said: "Here the state, as a creditor, is merely seeking to collect a fund which it manifestly holds in a proprietary capacity. * * * and * * * the state * * * must not

expect more favorable treatment than is fair between men.''

5. The board assigns error because the judgment of the district court was made without prejudice to its right to apply for the allowance of its demand as a common claim. Counsel for the board contend that the bank commissioner should have allowed it as a common claim upon its rejection as a preference. It does not appear that the bank commissioner has been requested to thus allow it, or that he has refused to do so. An objection by the board that a judgment is entered without prejudice to its rights is unusual and contains no merit.

The demurrer was rightly sustained and the judgment is affirmed.

MR. JUSTICE BURKE and MR. JUSTICE HILLIARD concur.