## STATE ET AL. *v.* CARSON VALLEY BANK ET AL.

No. 3027

July 7, 1933.                                   23 P. (2d) 1105.

*Gray Mashburn,* Attorney-General; *W. T. Mathews,* Deputy Attorney-General; and *John R. Ross,* for Appellants:

*Harwood & Diskin,* for Respondents:

## OPINION

*Per Curiam:*

This case is before us on an appeal from a judgment and order in a suit instituted to have the state declared a preferred creditor in the matter of the failure of the Carson Valley Bank, a corporation existing under the laws of the state and doing a general banking business.

The facts, so far as necessary here to state, are these:

The bank failed to open its doors on November 1, 1932, at which time state funds in a large sum were therein deposited; that E. J. Seaborn was for a long time prior to said date, and now is, the state bank

examiner; that the legislature of the state, at its special session in 1928, passed an act entitled: "An Act to authorize the deposit of state moneys in banks in this state, and to repeal all acts and parts of acts in conflict with this act," which was duly approved by the governor, being sections 7030 to 7041 N. C. L., inclusive (session laws 1928, pp. 63 to 67); that soon after the approval of said act the state treasurer and the state board of examiners of this state, pursuant to said act, adopted a plan wherein it was provided that public funds of the state be deposited in banks doing business in this state, and that, pursuant to said act and said action of said officials, George B. Russell, the state treasurer, began to deposit state funds in certain banks in the state, and among them the said Carson Valley Bank, and continued making such deposits up to the time of the closing of said bank; that the lieutenant and acting governor of the state, on October 31, 1932, declared a banking holiday, which, in accordance with subsequent similar declarations, continued up to and including December 12, 1932, on which latter date the said bank examiner took possession of said bank and of all of its assets, pursuant to "An Act to regulate banking * * * " approved March 22, 1911 (N. C. L. 1929, secs. 650 – 727), and amendments thereof; that the said bank has not resumed business, and that said funds are now in the possession of said state bank examiner; that on December 9, 1932, the said state treasurer made demand on said bank for the payment of all of the said funds so on deposit with it, and again made such demand on December 12, 1932, prior to the time said state bank examiner took possession of said bank; that on January 16, 1933, the said state bank examiner gave notice to the creditors of said bank to present their claims against said bank on or before March 14, 1933; that the said state treasurer, on March 13, 1933, filed with said bank examiner his claim in behalf of the state, claiming that the said funds were a preferred claim; that the said bank examiner disallowed said claim as a preferred claim;

that the said deposits were secured to the state by a surety bond given in pursuance of the act authorizing the deposit of state moneys in banks, above mentioned.

The second cause of action is bottomed upon the identical facts, as is the first cause of action, with the additional fact that the cashier of said bank had issued to the state treasurer certain cashier's checks which had been unpaid at the time said bank closed its doors.

Only three questions are presented for our consideration, namely: (1) Did there exist at common law a right of preference of the sovereign in the case of a bank failure? (2) If yes, was that rule adopted when Nevada became a state? And (3) if it does obtain in Nevada, has it been waived by the state?

Taking the view we do, it is not deemed necessary to determine the first two question suggested, for, if they should be answered in the affirmative, we are of the opinion that our conclusion would in no way be influenced thereby; but, conceding for the purpose of this case, without so deciding, that the first two questions should be answered in the affirmative, we think the doctrine of the sovereign right of priority has been waived.

Preliminary to considering the main question involved, we may say that counsel for neither the appellants nor respondents made comment on the provision in the statute (Comp. Laws 1929, sec. 7030) that state moneys on deposit in the banks should be deemed in the state treasury. Counsel were asked by the chief justice their construction of this provision, whereupon counsel for respondents stated that the provision alluded to was incorporated in the act in view of the statute (Comp. Laws 1929, sec. 6918) requiring certain state officers to count monthly the money in the hands of the state treasurer. Counsel for appellants acquiesced in this construction, and we think it the right one.

For many years the law of this state prohibited, under penalty, the depositing of public moneys in banks. To our minds, this indicates that the legislature never contemplated the adoption of the so-called sovereign right of preference, but, be that as it may,

our legislature in 1913 enacted a statute (chapter 104, Stats. 1913, p. 127), which authorized the deposit of public funds in banks on condition that the bank pay 2½ percent interest on said deposits, and on the further conditions, among others, that the bank deposit with the state treasurer bonds of the United States, of this state, or of any county, municipality, or school district within the state, of the value of at least 15 percent in excess of the amount deposited, subject to the right to require additional security, and that the treasurer shall enter into a written contract, in duplicate, stating the terms upon which state money is deposited with a bank.

At a special session of the legislature in 1928, an act was passed, authorizing the state treasurer to deposit, to the credit of the state, subject to check without notice, the moneys belonging to the state, in any state or national bank in the state, subject to the written consent of the state board of examiners; and providing that moneys so deposited shall be deemed to be in the state treasury; that not more than one-fourth of the money available for deposit shall be deposited in any one bank. Said act also provides that all deposits of public funds shall be secured by bonds of the United States, of this state, of any county, municipality, school district, or irrigation district within the state, equal in value to the amount of the deposit, or in lieu thereof by a depository bond of an approved surety or bonding company. Sections 7030–7041, N. C. L. 1929.

While we do not find it necessary to pass upon the question of the preference of the state, those who are interested in the question will find authorities to the point in the following cases, and the citations therein, viz: Fidelity & Deposit Co. v. Brucker (Ind. Sup.), 183 N. E. 668; U. S. Fid. & G. Co. v. Bramwell, 108 Or. 261, 217 P. 332, 32 A. L. R. 829; Shaw v. U. S. Fid. & G. Co. (Tex. Com. App.), 48 S. W. (2d) 974, 83 A. L. R. 1113, note.

1. Coming now to the main question, we think the view that the rule of the preference of the sovereign,

if any such rule existed at common law, was waived, is sustained by the better reasoning and practically the unanimous weight of authority, where the state has enacted legislation such as exists in Nevada.

What policy could have animated the legislature of 1913 in enacting the law requiring security to the extent of 15 percent in excess of the amount of deposits, and the right to draw interest upon such deposits, unless it was the intention to waive any preferential right, and rely solely upon the security demanded and the assets of the depository? Pursuant to statute, the state not only has security to protect its deposits, plus its pro rata share of what might be realized from the assets of the bank, in case of failure, but, in addition, the right of supervision by the state bank examiner; the statute also provides that, in case of the failure of any such depository to pay the amount of deposit on demand, the treasurer shall immediately commence action against such depository and sureties for the amount due. Contracts entered into, as in the instant case, pursuant to statute, are business transactions. In such a situation, how can we consistently hold that the state did not intend to waive any right of preference it might have otherwise asserted?

The supreme courts of Montana and of Oregon reached a different conclusion from that to which we have come, but those courts do not deal with questions of statutory provisions such as ours; hence cannot influence our conclusion.

In the case of In re Holland Banking Co., 313 Mo. 307, 281 S. W. 702, 708, the court disposes of the Montana cases and the question involved in the following language:

"A Montana case cited by appellant seems more nearly to approach the question before us than any of the other cases cited. It is Fidelity & Deposit Co. v. McClintock, 218 P. 652, 68 Mont. 342. There was no statute giving the state such priority, but the common law on the subject was held to be in force in that state. The case of Ætna Accident & Liability Co. v.

Miller, 170 P. 760, 54 Mont. 377, L. R. A. 1918c, 954, upon which the Fidelity & Deposit Case was ruled, does not discuss the effect upon the priority of the state of exaction of adequate security for its deposits under a depository law. The Fidelity & Deposit Case goes further, and holds that the enactment of a depository statute requiring security for such deposits does not expressly waive the state's preference, and is not inconsistent with the common-law priority as to debts due the state. It was said:

" 'Since this state, in virtue of its sovereignty, had the preference right conferred by the common law and could lose it only by the declaration of the lawmaking power, and since we fail to find any statutes from which a legislative purpose to waive the right can be deduced, we adhere to our former decision, and hold that the right still exists in all its force and vigor.'

"The requirement of an express waiver was not held to be necessary in the cases we have cited supporting the rule that no priority will be accorded the state's debt where the state depository law has provided for complete and adequate security for the state's deposits. The Montana case seemingly stands alone in this respect."

In dealing with a statute somewhat similar to ours, the supreme court of Arizona, in the case of In re Central Bank of Wilcox, 23 Ariz. 574, 205 P. 915, 916, said: "Bearing in mind that the object of such preference is to secure the state in its revenues, if the Legislature has adopted other means to attain the purpose, then the reason for applying the common-law rule of the sovereign prerogative, as has been done in some jurisdictions, does not exist in Arizona, even though the common law is by statutory adoption a part of the laws of the state when not inconsistent with the Constitution of the United States or the Constitution or laws of the state or established customs of the people of the state. Paragraph 5555, Civil Code. We think the plan for lending and safeguarding the public moneys of the state and counties provided for in title 44, Civil Code, supra, in allowing the state to exact security from the depositary,

whereas no other depositor or patron of the bank is given such privilege, must have been intended as a substitute for the common-law prerogative. By this plan the state is preferred in this: It may participate with all other creditors in the distribution of the assets of the insolvent and, in addition thereto, for any deficiency, have recourse to its security. If it has taken interest-bearing bonds of the United States or the state or any municipality thereof, these may be subjected to the payment of the balance, or, if the depositary has given personal security or secured the deposit by a surety bond, these may be followed. The state at all events has every reasonable and fair opportunity to guard its funds, and in the absence of unexpected misfortune or lapse of duty, a denial of a preference to it, over other creditors, would be harmless."

The supreme court of Texas, in a strong opinion applying a statute requiring security in case of the deposit of state money, sums up in the following words:

"It would seem that, if the Legislature did not intend to modify the state's right of priority in payment of its deposits, it has been unusually severe and exacting in the character of security required for such deposits. The attitude of the Legislature in making these stringent requirements of banks holding state funds is utterly inconsistent with the idea that such requirements were intended to be merely cumulative of the state's right of priority in payment over other depositors. * * *

"If the Legislature did not purpose, in enacting the depository law, to modify such common-law rule, then it is placed in the unenviable position of deliberately so legislating as to place banks, organized under the laws of this state, at a serious disadvantage in operating in competition with national banks. The Legislature is bound to have known that it would be extremely difficult for state banks to obtain depositors if it was known that they were subject to the hazard of losing

their deposits, or a substantial portion thereof, in case of insolvency on account of such banks being required to pay the state deposits in full when no such requirement was or could be made applicable to national banks, although they are allowed to become state depositories.

"We do not think it fair to ascribe a deliberate purpose to the Legislature to so legislate as to discriminate against state banks in such a way as to place them at a decided disadvantage in competing with national banks. It would be more reasonable to assume that the Legislature, by making the unusually strict provisions for security of state deposits, contemplated that state banks would be placed upon the same basis in this regard as national banks, and that the state in regard to its deposits would look alone for any advantage over other depositors to the collateral security required by the provisions of its depository laws." Shaw v. U. S. Fid. & G. Co. (Tex. Com. App.), 48 S. W. (2d) 974, 976, 83 A. L. R. 1113.

The supreme court of Wyoming, in National Surety Co. v. Morris, 34 Wyo. 134, 241 P. 1063, 1067, 42 A. L. R. 1290, is in line with the views reached by the courts from which we have quoted. The court considered the question at some length, saying, among other things:

"There is another thing that would seem to require the dissipation of any doubt on the subject; that is, the provision of our law for interest on deposits. By such provision the state engaged in a business enterprise, and put itself on a level with private individuals in that respect. It does not expect a bank to keep the state's money safely, except only as the money of individuals is so kept through and by means of the general assets of the bank. The state expects the bank to lend its money the same as it lends the money deposited by individuals. It would be absurd to expect it to keep the money on hand, when interest must be paid thereon. Hence the state's money is no trust fund, but the relation of debtor and creditor is created. It was said long ago that when a state puts itself on a level

with private individuals, by engaging in a business enterprise it, to that extent, loses its character as sovereign. Governor v. Woodworth, 63 Ill. 254; Central Bank of Georgia v. Little, 11 Ga. 346; Bank v. Gibbs, 3 McCord (S. C.) 377. In the Illinois case the court said:

" 'It has been held that when the government becomes a partner with individuals in the prosecution of some business or enterprise, it divests itself of its sovereign character, so far as relates to that business, and takes the character of a private citizen. It does not impart to its associates its privileges and prerogatives, but descends to a level with those with whom it associates itself, and the character which belongs to its associates, and to the business which is to be transacted.'

"In these cases, it is true, the state was in partnership with private individuals, or itself conducted a private enterprise, which is not true here. Nevertheless these cases clearly show that a state is not always entitled to its sovereign prerogatives, unless, perhaps, retained by specific legislation, but that it loses them when it places itself in the same class and on the same footing with private individuals in connection with its property rights. The state has done that in connection with its deposits under our depository law, and thereby should be held to have clearly indicated that it has waived its prerogative rights."

The supreme court of Colorado, in a well-considered opinion, in Board of County Com'rs. v. McFerson, 90 Colo. 408, 9 P. (2d) 614, 615, in dealing with a claim of preference, said:

"Aside from the common law, we have no statute that warrants such preference. On the contrary, section 1, chapter 83, pages 280–283, Laws 1927, makes provision for the protection of public moneys in the hands of county treasurers. It provides, in substance, as follows: The treasurer shall deposit all funds that come into his possession, by virtue of his office, in one or more responsible banks located in this state. Such

bank or banks shall pay interest on the average daily balances at such rates as may be agreed upon, not less than 2 percent per annum, less clearing house charges. Before making such deposits, the county treasurer may take from such bank or banks a good and sufficient bond, provided, however, that the bank may tender to the treasurer, United States bonds or other securities of a specified class, which the treasurer shall accept in lieu of such bond.

"The above legislation shows that the state does not intend to rely upon a common-law right, since it has adopted other means of securing county revenues. National Surety Co. v. Pixton, 60 Utah, 289, 208 P. 878, 24 A. L. R. 1487; In re Central Bank of Wilcox, 23 Ariz. 574, 205 P. 915; Maryland Casualty Co. v. Rainwater, 173 Ark. 103, 291 S. W. 1003, 51 A. L. R. 1332; In re Holland Banking Co., 313 Mo. 307, 281 S. W. 702; National Surety Co. v. Morris, 34 Wyo. 134, 241 P. 1063, 42 A. L. R. 1290."

We might quote at length from other courts in line with the views expressed, but will content ourselves with citing the following cases to the point: Maryland Casualty Co. v. Rainwater, 173 Ark. 103, 291 S. W. 1003, 51 A. L. R. 1332; Fidelity & Dep. Co. v. Brucker (Ind. Sup.), 183 N. E. 668; National Surety Co. v. Pixton, 60 Utah, 289, 208 P. 878, 24 A. L. R. 1487.

Unless we are to fly in the face of every court in the land which has had under consideration statutes containing such provisions as do ours, we can reach no other conclusion than to affirm the judgment and order appealed from. We have carefully considered the arguments presented, and we are of the opinion that to reach any other conclusion it would be necessary that we override reason, common sense, the practical unanimity of authority, and be oblivious of the common dictates of equity.

2. As to the second cause of action, we need only say that the treasurer turned in to the bank checks, and in exchange therefor took cashier's checks. This

transaction created the relation of creditor and debtor merely, and does not entitle the treasurer to a preference. 5 R. C. L. 484; Skinner v. Porter, etc., 45 Idaho, 530, 263 P. 993, 73 A. L. R. 59, and note.

We are grateful to the respective counsel for their exhaustive, able, and lucid arguments in this matter. They have greatly aided the court.

It is ordered that the judgment and order appealed from be affirmed.