NEW MEXICO ASPHALT and REFIN-
ING COMPANY, a corporation,
Plaintiff,

v.

Bernard WILLIAMS, doing business as
Williams Oil Company, Bernard Wil-
liams, individually, and Lois S. Miller, as
County Treasurer and Public Trustee
of Montezuma County, Colorado, De-
fendants.

Civ. A. No. 4216.

United States District Court
D. Colorado.

May 23, 1955.

Garrison, Dilts & Hancock, Cortez,
Colo., William E. Doyle, Denver, Colo.,
for plaintiff.

Wolvington & Wormwood, Denver,
Colo., Forrest C. O'Dell, Denver, Colo.,
for Hawkeye-Security Ins. Co.

Pierpont Fuller, Denver, Colo., for re-
ceiver J. French McGaughey.

KNOUS, Chief Judge.

The question for determination herein
is whether the Hawkeye-Security Insur-
ance Company is entitled to preference in
the payment of its claim heretofore filed
with the Receiver in this proceeding
which by a compromise agreement has
been fixed as being for $13,637.77. The
claim is based on a payment made by
Hawkeye to the State of Colorado under
the provisions of a bond executed by
Hawkeye as surety covering defendant
Williams for state motor fuel taxes
which as a licensed motor fuel distribu-
tor he had collected but failed to remit.

A Colorado statute, Colo.Rev.Stat. '53,
§ 138–3–17, provides that where a dis-
tributor is put into the hands of a re-
ceiver all motor fuel tax money collected
by such distributor "due and owing to
the state shall be considered and treated
as preferred claims and the state of Colo-
rado shall be a preferred creditor and
shall be paid in full."

Hawkeye contends that by the process
of subrogation it is entitled to the pre-
ferred status accorded the state by the
foregoing statute.

The law appears to be fairly well
settled, as stated in 50 Am.Jur. 714, that
a surety who pays a tax claim in the cir-

cumstances here attending is entitled to make a claim for reimbursement in a receivership proceeding. In their arguments and briefs counsel for the plaintiff and the receiver tacitly so concede, but strenuously insist that Hawkeye has no preference, and at the most is only entitled to share in the assets pro rata with the other general creditors. Thus, the specific question for determination is whether Hawkeye's claim is entitled to a preferred status over general creditors.

Concerning this subject, 83 C.J.S., Subrogation, § 54(2), p. 685, states:

"Generally a surety who has paid the debt will be subrogated to any right of priority, special privilege, or remedy which the law accords to the debt, or in connection with its enforcement because of the character of the debt or the character or status of the creditor."

Continuing in the next paragraph of the same section, the editors of C.J.S. say:

"However * * * there are a number of cases establishing the view that a state's prerogative right of preference or priority is not a right which will pass to a surety by way of subrogation."

The basic case cited in support of this statement is United States Fidelity & Guaranty Co. v. McFerson, 78 Colo. 338, 241 P. 728. That case involved the distribution of assets of an insolvent bank which had been taken over by McFerson, the Colorado State Bank Commissioner. The plaintiff, as required by a surety bond issued by it, had reimbursed the State of Colorado for the loss of certain state funds which had been on deposit in the bank and then claimed a preference against the assets in the Commissioner's hands on the theory that the State had a common law preference to which the surety company became subrogated. Speaking for the Supreme Court of Colorado, the eminent Mr. Justice Burke in the opinion said, inter alia, 78 Colo. 340, 341, 241 P. 729:

"The principle that, where the reason for a rule fails, the rule fails,

seems especially applicable here. The sovereign's preference is an exception to the general law. The doctrine is a harsh one, and from time immemorial has rested solely upon public necessity. Moreover, if Finch is correct, as quoted by Blackstone, that it is 'a maxim that the prerogative is that law in case of the King which is law in no case of the subject,' the prerogative could never be the subject of subrogation. Here the security was ample; the state has been paid by one employed for the very purpose of assuming that risk and performing that service. There is no necessity and hence no preference. If the surety were also insolvent the necessity would appear.

"If the rule of the common law— that the debts of the state are preferred to the debts of the citizen because it is necessary to the public welfare to secure the public revenue —is applicable to state bank deposits when the bank becomes insolvent, and if that preference be subject to the doctrine of subrogation in favor of one who pays the state, then we hold that rule inapplicable when the state debt is otherwise secured, because there is no necessity for the preference."

Thus, it was held that even if the state had a preference, and it would seem to make no difference whether such existed by virtue of the common law or a statute, the state's preference could never be the subject of subrogation to a surety who had fully discharged the debt of the state.

In the Court's opinion, the subsequent case of Board of County Commissioners of County of San Miguel v. McFerson, 90 Colo. 408, 9 P.2d 614, cited and stressed by counsel for Hawkeye, has no real bearing upon the question here under consideration. Therein the Supreme Court held simply that even though security for public funds deposited in a bank by a county was inadequate, the county could claim no common law preference against the assets of the insol-

vent bank. No question whatsoever concerning any right of subrogation was involved in that proceeding.

There can be no doubt that the question in controversy is controlled by the law of Colorado. It thus makes no difference whether the decision of the Colorado Supreme Court in the case of United States Fidelity & Guaranty Co. v. McFerson, supra, represents a minority view or not, or whether its rule may be in conflict with decisions in other jurisdictions cited by counsel for Hawkeye. In Colorado that case is law and this Court is required to adjudge accordingly. It thus is the conclusion of the Court that Hawkeye is not entitled to preference or the status of a preferred creditor herein; however, it also is the opinion of the Court that Hawkeye, to the extent of its claim, is entitled to share pro rata with the other general creditors. Accordingly, it is

Ordered that counsel for plaintiff and the receiver within thirty days prepare an order consistent with this memorandum opinion, which shall be settled by notice if not stipulated to as to form.